# MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS *v.* HARRIS.

## ERROR TO THE JUSTICE COURT, PRECINCT NO. 6, HOPKINS COUNTY, TEXAS.

No. 604. Submitted February 24, 1914.—Decided June 8, 1914.

*Missouri, Kansas & Texas Ry.* v. *Cade*, 233 U. S. 642, followed to effect that the Texas Statute of 1909 allowing an attorney fee in certain cases for claims of less than a specified amount is not unconstitutional under the due process or equal protection provisions of the Fourteenth Amendment.

A state police regulation designed to promote the payment of small but well founded claims and to discourage litigation in respect thereto, and which only incidentally includes claims arising out of interstate commerce, does not constitute a direct burden on interstate commerce, and is not, in the absence of legislation by Congress on the subject, repugnant to the commerce clause or otherwise in conflict with Federal authority. *Atlantic Coast Line* v. *Mazursky*, 216 U. S. 122.

When Congress has exerted its paramount legislative authority over a particular subject of interstate commerce, state laws upon the same subject are superseded.

The mere creation of the Interstate Commerce Commission, and the grant to it of a measure of control over interstate commerce, does not, in the absence of specific action by Congress or the Commission, interfere with the police power of the States as to matters otherwise within their respective jurisdictions and not directly burdening interstate commerce even though such commerce may be incidentally affected. *Southern Ry. Co.* v. *Reid*, 222 U. S. 424.

While the Carmack Amendment supersedes state legislation on the subject of the carrier's liability for loss of interstate shipments, it does not interfere with a state statute incidentally affecting the remedy for enforcing that liability, such as a moderate attorney fee in case of recoverable contested claims for damages. *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, distinguished.

The Texas Statute of 1909 allowing a reasonable attorney's fee as a

part of the costs in suits on contested but proper claims of less than $200 is not unconstitutional as applied to claims for loss on interstate shipments nor is it inconsistent with any of the provisions of the Act to Regulate Commerce.

THE facts, which involve the constitutionality of a statute of the State of Texas allowing an attorney's fee in certain actions based on claims for small amounts against railway companies, are stated in the opinion.

*Mr. Joseph M. Bryson, Mr. Aldis B. Browne, Mr. Alexander S. Coke* and *Mr. A. H. McKnight* for plaintiff in error:

The act of the legislature in question is void because in conflict with that provision of § 1 of the Fourteenth Amendment to the Constitution of the United States which guarantees the equal protection of the laws.

The act violates that provision of § 1 of the Fourteenth Amendment which prohibits the taking of property without due process of law.

The act is in part a regulation of, a burden upon, and an interference with, interstate commerce, contrary to subdivision 3, § 8, Article I of the Constitution of the United States, and is in conflict with the Act to Regulate Commerce approved February 4, 1887, and the acts amendatory thereof and supplementary thereto, and to that extent is void; and since the good, if any, and the bad in it are so intermingled that the one cannot be separated from the other, the act must fail in whole.

The provisions of the act of the legislature in question relating to overcharges and loss and damage claims, as to interstate shipments, are void.

In support of these contentions, see *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491; *Adams Exp. Co.* v. *New York*, 232 U. S. 14; *A., T. & S. F. Ry. Co.* v. *Matthews*, 174 U. S.

96; *Atl. Coast Line* v. *Mazursky*, 216 U. S. 122; *Atl. Coast Line* v. *Riverside Mills*, 219 U. S. 186; *Barbier* v. *Connolly*, 113 U. S. 27; *Barrett* v. *Indiana*, 229 U. S. 30; *Blake* v. *McClung*, 172 U. S. 259; *Bradley* v. *Richmond*, 227 U. S. 481; *Central of Georgia R. R. Co.* v. *Murphey*, 196 U. S. 194; *Chi., M. & St. P. Ry. Co.* v. *Polt*, 232 U. S. 165; *C., R. I. & P. Ry. Co.* v. *Hardwick Elevator Co.*, 226 U. S. 426; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 79; *El Paso & N. E. R. R. Co.* v. *Gutierrez*, 215 U. S. 97; *Employers' Liability Cases*, 207 U. S. 501; *Fidelity Mutual Life Assn.* v. *Mettler*, 185 U. S. 308; *G., C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150; *G., C. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98; *G., C. & S. F. Ry. Co.* v. *Moore*, 83 S. W. Rep. 362; *Hale* v. *Henkel*, 201 U. S. 76; *H. & T. C. R. R. Co.* v. *Mayes*, 201 U. S. 321; *Ill. Cent. R. R. Co.* v. *McKendree*, 203 U. S. 529; *Int. Com. Comm.* v. *L. & N. R. R. Co.*, 227 U. S. 88; *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639; *McNeill* v. *Southern Ry. Co.*, 202 U. S. 543; *M., K. & T. Ry. Co.* v. *Harriman*, 227 U. S. 657; *Mo. Pac. Ry. Co.* v. *Humes*, 115 U. S. 512; *Mo. Pac. Ry. Co.* v. *Larabee Mills*, 211 U. S. 612; *Mondou* v. *N. Y., N. H. & H. R. R. Co.*, 223 U. S. 1; *Nor. Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; *St. L., I. M. & S. Ry. Co.* v. *Wynne*, 224 U. S. 354; *St. L. & S. F. Ry. Co.* v. *Mathews*, 165 U. S. 1; *Seaboard Air Line* v. *Seegars*, 207 U. S. 73; *Simpson* v. *Shepard*, 230 U. S. 352; *Sinnot* v. *Davenport*, 22 How. 242; *Smyth* v. *Ames*, 169 U. S. 522; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400; *Southern Ry. Co.* v. *Reid*, 222 U. S. 424; *Southern Ry. Co.* v. *Reid & Beam*, 222 U. S. 444; *West. Un. Tel. Co.* v. *Milling Co.*, 218 U. S. 406; *Yazoo & Miss. R. R. Co.* v. *Greenwood Grocery Co.*, 227 U. S. 1; *Yazoo & Miss. R. R. Co.* v. *Jackson Vinegar Co.*, 226 U. S. 217; *Yick Wo* v. *Hopkins*, 118 U. S. 356.

There was no appearance or brief filed for defendant in error.

Mr. Justice Pitney delivered the opinion of the court.

In this case the plaintiff below (now defendant in error) recovered à judgment for three dollars and fifty cents damages for loss of certain freight that was shipped from St. Louis, Missouri, consigned to plaintiff at Como, Texas, and delivered by the initial carrier to defendant for transportation to destination; the loss having occurred on defendant's line in Texas. The judgment includes an attorney's fee of ten dollars, allowed by virtue of the local statute approved March 13, 1909, Laws p. 93, Texas Rev. Civ. Stat. 1911, Arts. 2178 and 2179, which was under consideration in *Missouri, Kansas & Texas Ry.* v. *Cade,* decided May 11, 1914, 233 U. S. 642, and is set forth *verbatim* in a marginal note to the opinion in that case. The controversy turns upon the allowance of the attorney's fee, the same Federal questions having been raised in the state court and in this court that were raised in the *Cade Case.* So far as the Fourteenth Amendment is concerned, our opinion in that case renders further discussion unnecessary. But since the claim of the present plaintiff was based upon freight lost in interstate commerce, we must now pass upon the question whether the allowance of an attorney's fees in such à case, pursuant to the Texas statute, is repugnant to the Commerce Clause of the Federal Constitution or the Act to Regulate Commerce and amendments thereof.

By way of preface, we should repeat that the state court of last resort has construed the act as relating only to the collection of claims not exceeding $200 in amount; that by its terms it applies to claims "against any person or corporation doing business in this State, for personal services rendered or for labor done, or for material furnished, or for overcharges on freight or express, or for any claim for lost or damaged freight, or for stock killed or injured by such person or corporation, its agents or employés"; and

that, in the *Cade Case,* we have held it to be a police regulation designed to promote the prompt payment of small but well founded claims, and to discourage unnecessary litigation in respect to them; and have held it, in its general application, to be not repugnant to either the "equal protection" or the "due process" clauses of the Fourteenth Amendment.

Such being the character of the statute, and it having a broad sweep which only incidentally includes claims arising out of interstate commerce, it follows that it cannot be held to constitute a direct burden upon such commerce and hence repugnant to the commerce clause of the Constitution, or otherwise in conflict with the Federal authority, in the absence of legislation by Congress covering the subject. To this extent, the case is controlled by the decision in *Atlantic Coast Line R. R.* v. *Mazursky,* 216 U. S. 122, where it was held that a South Carolina statute which required common carriers doing business in the State to settle claims for loss or damage to property while in the possession of the carrier within forty days, in case of shipments wholly within the State, and within ninety days, in case of shipments from without the State, and that failure to adjust and pay a claim within the prescribed period should subject the carrier to a penalty of fifty dollars in case the full amount claimed was recovered, as the statute was applied to a claim for loss or damage to interstate freight while in the possession of the carrier within the State, was not an unwarrantable interference with interstate commerce, in the absence of legislation by Congress, but was rather a regulation in aid of the performance by the carrier of its legal duty. The decision was rested upon the authority and reasoning of *Sherlock* v. *Alling,* 93 U. S. 99, 104; *Smith* v. *Alabama,* 124 U. S. 465, 476; *Nashville &c. Ry.* v. *Alabama,* 128 U. S. 96; *Western Union Telegraph Co.* v. *James,* 162 U. S. 650, 660; *Chicago, Mil. & St. P. Ry.* v. *Solan,* 169 U. S. 133, 137; *Pennsyl-*

*vania R. R. Co.* v. *Hughes*, 191 U. S. 477, 491; *Missouri Pacific Ry.* v. *Larabee Mills*, 211 U. S. 612, 623. And see *Western Union Tel. Co.* v. *Milling Co.*, 218 U. S. 406, 416; *Western Union Telegraph Co.* v. *Crovo*, 220 U. S. 364; *Minnesota Rate Cases*, 230 U. S. 352, 402, 408, 410.

But the "Act to Regulate Commerce" (Act of February 4, 1887, c. 104, 24 Stat. 379), is now invoked, together with its amendments, and especially that part of the Hepburn Act of June 29, 1906, known as the Carmack Amendment (c. 3591, 34 Stat. 584, 595); and it remains to be considered whether the Texas statute, as applied to claims for loss or damage to interstate freight while in the possession of the carrier in the State of Texas, is repugnant to this Federal legislation. It is of course settled that when Congress has exerted its paramount legislative authority over a particular subject of interstate commerce, state laws upon the same subject are superseded. *Northern Pacific Ry.* v. *Washington*, 222 U. S. 370, 378; *Erie Railroad Co.* v. *New York*, decided May 25, 1914, 233 U. S. 671. But it is equally well settled that the mere creation of the Interstate Commerce Commission, and the grant to it of a measure of control over interstate commerce, does not of itself, and in the absence of specific action by the Commission or by Congress itself, interfere with the authority of the States to establish regulations conducive to the welfare and convenience of their citizens, even though interstate commerce be thereby incidentally affected, so long as it be not directly burdened or interfered with. *Missouri Pacific Ry.* v. *Larabee Mills*, 211 U. S. 612, 623; *Southern Ry. Co.* v. *Reid*, 222 U. S. 424, 437.

In the *Larabee Mills Case* it was held that the railroad company, by engaging in the business of a common carrier, had become subject to certain duties imposed upon it by general law, including the obligation to treat all shippers alike; that the enforcement of this duty and the regulation of matters pertaining to it were within the authority

of the State, although interstate commerce was thereby indirectly affected; and that until specific action by Congress or the Commission, the control of the State over such incidental matters remained undisturbed. Hence, a decision by the Supreme Court of Kansas, awarding a mandamus to require the company to restore the service of transferring cars between the lines of another railroad and the Larabee Mills and Elevator, in aid of interstate and intrastate shipments alike, was affirmed. This case arose after the enactment of the Hepburn Act.

On the other hand, it was held in the *Reid Case* that since Congress had taken control of the subject of the making of rates and charges, and by § 2 of the Hepburn Act had forbidden the carrier to engage or participate in transportation unless the rates, fares, and charges had been filed and published in accordance with the provisions of the act, a state law requiring railroad companies to receive freight for transportation whenever tendered at a regular station and to forward the same over the route selected by the person offering the shipment, under a penalty of fifty dollars a day besides all damages incurred, was in necessary conflict, since it required the carrier to do the very things forbidden by the Federal law.

So in *Chicago, R. I. &c. Ry.* v. *Hardwick Elevator Co.*, 226 U. S. 426, it was held that since by the Hepburn Act, Congress had legislated concerning deliveries of cars in interstate commerce by carriers subject to the act, specifically requiring the carrier to provide and furnish "transportation" (cars being embraced within the definition of the term) upon reasonable request, the authority of the State of Minnesota to legislate upon the subject of the delivery of cars when called for to be used in interstate traffic was superseded. And see *Yazoo & Mississippi R. R.* v. *Greenwood Grocery Co.*, 227 U. S. 1.

These cases recognize the established rule that a state law enacted under any of the reserved powers—especially

if under the police power—is not to be set aside as inconsistent with an act of Congress, unless there is actual repugnancy, or unless Congress has, at least, manifested a purpose to exercise its paramount authority over the subject.  The rule rests upon fundamental grounds that should not be disregarded.  In *Reid* v. *Colorado*, 187 U. S. 137, 148, the court, speaking by Mr. Justice Harlan, said: "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly manifested.  This court has said—and the principle has been often reaffirmed—that 'In the application of this principle of supremacy of an act of Congress in a case where the state law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together.'  *Sinnot* v. *Davenport*, 22 How. 227, 243."  In *Savage* v. *Jones*, 225 U. S. 501, 533, the court said: "When the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed.  If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power [citing cases].  But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field.  In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State."  [Citing many cases.]

  With respect to the specific effect of the Carmack

Amendment (set forth in the margin [1]), it has been held, in a series of recent cases (*Adams Express Co.* v. *Croninger*, 226 U. S. 491; *C., B. & Q. Railway* v. *Miller*, 226 U. S. 513; *Chicago, St. P. &c. Ry.* v. *Latta*, 226 U. S. 519; *Wells, Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469; *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639; *Missouri, Kans. & Tex. Ry. Co.* v. *Harriman*, 227 U. S. 657; *Chicago, R. I. & Pac. Ry. Co.* v. *Cramer*, 232 U. S. 490; *Great Northern Ry.* v. *O'Connor*, 232 U. S. 508; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97), that the special regulations and policies of particular States upon the subject of the carrier's liability for loss or damage to interstate shipments and the contracts of carriers with respect thereto, have been superseded.

But the Texas statute now under consideration does not in anywise either enlarge or limit the responsibility of the carrier for the loss of property entrusted to it in transportation, and only incidentally affects the remedy for enforcing that responsibility. As pointed out in the *Cade*

---

[1] That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof.

*Case, supra,* it imposes not a penalty, but a compensatory allowance for the expense of employing an attorney, applicable in cases where the carrier unreasonably delays payment of a just demand and thereby renders a suit necessary.    In fact and effect, it merely authorizes a moderate increment of the recoverable costs of suit in the large class of cases that are within its sweep, among which are incidentally included claims for freight lost or damaged in interstate commerce.

It is true that in *Atlantic Coast Line* v. *Riverside Mills,* 219 U. S. 186, 208 (a case arising since the Hepburn Act), it was held that § 8 of the act of February 4, 1887, does not authorize the allowance of a counsel or attorney's fee in an action for loss of property entrusted to the carrier for purposes of transportation.    But that is far from holding that it is not permissible for a State, as a part of its local procedure, to permit the allowance of a reasonable attorney's fee, under proper restrictions.    In claims of this character, based upon the ordinary liability of the common carrier, although regulated by the Commerce Act, the state courts have full jurisdiction, and some differences respecting the allowance of costs and the amount of the costs are inevitable, as being peculiar to the *forum.* And we think that where a State, as in this instance, for reasons of internal policy, in order to offer a reasonable incentive to the prompt settlement of small but well-founded claims, and as a deterrent of groundless defenses, establishes by a general statute otherwise unexceptionable the policy of allowing recovery of a moderate attorney's fee as a part of the costs, in cases where, after specific claim made and a reasonable time given for investigation of it, payment is refused, and the claimant succeeds in establishing by suit his right to the full amount demanded, the application of such statute to actions for goods lost in interstate commerce is not inconsistent with the provisions of the Commerce Act and its amendments.    The local

statute, as already pointed out, does not at all affect the ground of recovery, or the measure of recovery; it deals only with a question of costs, respecting which Congress has not spoken. Until Congress does speak, the State may enforce it in such a case as the present.

*Judgment affirmed.*