BLALOCK HARDWARE COMPANY v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 24 November, 1915.)

**1. Carriers of Goods—Overcharges—Evidence—Rates for Different Routing—Trials—Nonsuit.**

The burden is upon the plaintiff to show that a freight rate charged and collected by the carrier on an interstate shipment was in excess of its tariff required of the carrier to be published, when he seeks to recover this excess and the State statutory penalty; and where the shipment has been routed over one line of connecting carriers and the tariff filed by the carrier over another route is shown, it affords no evidence as to the rate of the actual route of the shipment, and, in the absence of further evidence, a judgment as of nonsuit should be granted.

**2. Interstate Commerce—Carriers of Goods—Overcharges—Penalty Statutes—Federal Control.**

Under the Interstate Commerce act, as amended, Congress, in the exercise of the constitutional powers conferred on it, has taken entire control of rates upon interstate shipments of goods, and our statute (Rev., secs. 2643, 2644), imposing a penalty upon the carriers for collecting excessive rates for such shipments and refusing to repay them, is inoperative.

**3. Interstate Commerce—Federal Interpretation—State Courts.**

The interpretation placed upon the Interstate Commerce act and the legal consequence of its enactment, by the Supreme Court of the United States, is controlling in the State courts.

APPEAL by defendant from *Rountree, J.,* at March Term, 1915, of ANSON.

Civil action to recover an alleged overcharge upon an interstate shipment, with the penalty for failure to refund said overcharge within sixty days as required by Revisal, secs. 2643-2644.

In May, 1912, there was shipped to plaintiff from Detroit, Mich., a carload of freight, and upon arrival plaintiff paid charges thereon amounting to $161.34. Plaintiff claimed that the charge should have been only $153.38, and, therefore, he had been overcharged $7.96. Demand for the return of this alleged overcharge not being complied with, this action was instituted to recover the same, together with the penalty allowed by the statute for failure to refund the overcharge within the specified time.

Upon the trial below defendant moved to dismiss the action for want of jurisdiction, in that plaintiff's cause of action, if any, arose under the Federal act to regulate commerce, and only the Federal courts or the Interstate Commerce Commission had jurisdiction of claims arising under said act. This motion being denied, defendant then moved, for the same reason, to remove the case to the Federal court, but this motion was also denied. Defendant offered no evidence, but moved for judgment of nonsuit upon plaintiff's testimony. This motion being denied, defendant requested the court to charge the jury that no penalty could be collected for failure to refund an overcharge upon an interstate shipment. The court declined to so charge. There was a verdict for plaintiff for the overcharge, with penalty of $100, and, the court having denied defendant's motion to set aside the verdict and for a new trial, judgment was entered upon the verdict, whereupon defendant excepted and appealed. .

*Gulledge, Boggan & Kelly and H. H. McLendon for plaintiff.*
*McIntyre, Lawrence & Proctor and Walter E. Brock for defendant.*

WALKER, J., after stating the case: It is contended by the defendant that plaintiff has failed to offer any evidence of the alleged overcharge. The burden was upon the plaintiff to show that the amount charged by defendant was in excess of the rate specified in the published tariffs. (Rev., sec. 2642.) The only evidence offered by plaintiff as to the published rate was a certificate of the secretary of the Interstate Commerce Commission, showing that the rate on automobiles from Detroit, Mich., to Richmond, Va., was a certain amount, and that the rate from Richmond to Wadesboro was a certain amount. But the claim papers filed by plaintiff with defendant, and offered in evidence by plaintiff, show that the shipment in question did not move by way of Richmond, Va., but over an entirely different route. The bill of lading showed that the shipment moved over the line of the C. C. & O. R. Company and was by

that carrier delivered to defendant's line at Bostic, N. C. The freight bills showed that defendant received this shipment at Bostic, N. C. (the junction point), and transported it to Wadesboro. It therefore follows that the certificate showing what the published rate was, if the shipment had moved by way of Richmond, Va., is no evidence whatever as to what is the correct or published rate when the shipment moved by way of Bostic, N. C. The defendant was entitled to charge according to the rate allowed over the route by which the shipment was made, nothing else appearing. The charge over one route may not be the same as the charge over a different route, for this Court has held that the rate between two points in one direction is not necessarily the same as that between the same points when the shipment moves in an opposite direction, and, *a fortiori,* when it moves in a different direction or by a different route. There was no evidence that the rates were published as required by the Interstate Commerce act. This question was decided in *Peanut Co. v. R. R.,* 166 N. C., 62; *Scull v. R. R.,* 144 N. C., 180. This being all the evidence offered by plaintiff to show the published rates, and the rates shown, even if they had been properly published, not being applicable to shipments moving via Bostic, N. C., the plaintiff should have been nonsuited, as there was no proof of an overcharge.

As to the penalty. This Court has upheld Revisal, sec. 2644, against attack based upon the grounds that it denied to the carrier the equal protection of the law, due process of law, and because it conflicted with the commerce clause of the Federal Constitution, but defendant now contends that recent amendments of Congress have so completely taken possession of the field of commerce as to exclude the power of the State to legislate with respect to interstate shipments. The cases in which a State may exercise power over the general subject of commerce may be divided into three classes: first, those in which the power of the State is exclusive; second, those in which the State may act in the absence of Federal legislation; and, third, those in which, the subject being national in character, the action of Congress is exclusive and the State cannot interfere at all. *Harrill v. R. R.,* 144 N. C., 539; *Bridge Co. v. Kentucky,* 154 U. S., 204; *Telegraph Co. v. James,* 162 U. S., 650; *R. R. v. Reid,* 222 U. S., 424.

The Court held, in *R. R. v. Reid, supra,* passing upon the validity of our statute, Revisal, sec. 2631, in regard to the penalty for refusing to receive freight which has been duly tendered, that inhibitive legislation of Congress is not essential to exclude that of a State upon incidental matters relating to interstate commerce, with respect to which both had a concurrent power, it being sufficient to do so if the congressional legislation occupies the field of regulation, and they said that "there is scarcely a detail of regulation which is omitted to secure the purpose to which the Interstate Commerce act is aimed. It is true that words

directly inhibitive of the exercise of State authority are not employed, but the subject is taken possession of." It then concludes that the statute imposing the penalty, being an invasion of the field of interstate commerce, is invalid.

The same Court said, in *R. R. v. Washington,* 222 U. S., 370: "The right of a State to apply its police power for the purpose of regulating interstate commerce, in a case like this, arises only from the silence of Congress on the subject, and ceases when Congress acts on the subject or manifests its purpose to call into play its exclusive power. This being the conceded premise upon which alone the State law could have been made applicable, it results that, as the enactment by Congress of the law in question was an assertion of its power, by the fact alone of such manifestation, that subject was at once removed from the sphere of the authority of the State." And in *R. R. v. Hardwick,* 226 U. S., 426: "The elementary and long-settled doctrine is that there can be no divided authority over interstate commerce, and that the regulations of Congress on that subject are supreme. It results, therefore, that in a case where, from the particular nature of certain subjects, the State may exert authority until Congress acts, under the assumption that Congress, by inaction, has tacitly authorized it to do so, action by Congress destroys the possibility of such assumption, since such action, when exerted, covers the whole field and renders the State impotent to deal with a subject over which it had no inherent, but only permissive power."

An examination of the Interstate Commerce act, as amended, will disclose that, upon the subject of rates, Congress has taken entire control, and especially as to excessive charges on them, or those not corresponding with the rates authorized, filed and published. It is not necessary that we should state its provisions more specifically. The following cases sustain our view in regard to the act and its legal effect upon the validity of the penalty imposed by Revisal, secs. 2643, 2644. *Express Co. v. Croninger,* 226 U. S., 491; *R. R. v. New York,* 233 U. S., 671; *R. R. v. Harris,* 234 U. S., 412; *R. R. v. Railroad Commission,* 236 U. S., 439; *R. R. v. Hooker,* 233 U. S., 97. But the recent case of *R. R. v. Furniture Co.,* 237 U. S., 597, is so decisive of the question that further citation is rendered useless. The following syllabus of that case states very concisely, though fully, the points considered and the result of the decision.

1. A State law not contrived in aid of the policies of Congress, but to enforce a policy of the State differently conceived, cannot be said to be in aid of interstate commerce.

2. When Congress has taken the particular subject-matter in hand, coincidence of a State statute is as ineffective as opposition, and a State law on the same subject cannot be sustained as a help to the Federal statute because it goes farther than Congress has seen fit to go.

3. A State statute which is a.burden on interstate commerce is not saved by calling it an exercise of police power.

4. Section 2573, Code of 1912, of South Carolina, imposing a penalty on carriers for failure to settle or adjust claims within forty days, is an unconstitutional burden on interstate commerce, and is also in conflict with the provisions of the act to regulate commerce, as amended by the act of 29 June, 1906 (Carmack amendment).

5. *R. R. v. Mazursky,* 216 U. S., 122, distinguished, as that case was decided prior to the enactment of the Carmack amendment.

This Court said, in *Marble Co. v. R. R.,* 147 N. C., 57: "If the section embraces any legislation which is not local in its nature and, although in aid of commerce, is a regulation thereof within the meaning of those terms as defined by the court having final and ultimate jurisdiction to decide such a question, the statute is void to the extent that it exceeds the proper limit of legislative power prescribed to the State by the Constitution of the United States as construed by that Court. When the purpose of the legislation is of such a kind as to require uniformity, then, in order to bring the transportation within the control of the State as a part of its domestic commerce, the subject transported must be, within the entire voyage, under the exclusive jurisdiction of the State." The decisions of the highest Federal Court determine conclusively for us the true construction and meaning of the Interstate Commerce act and the legal consequences flowing from its enactment, and we are bound to accept its construction without regard to our own views as to what it should be, not implying, though, that there is any such difference of opinion. This compels us to hold that the statute in question, so far as it imposes a penalty for failure to refund the amount of an overcharge for freight shipped in interstate commerce, cannot be enforced, being in conflict with the constitutional legislation of Congress upon the same subject. Other errors are assigned, but we need not consider them.

There was error in the refusal of the court to grant the nonsuit, for which we reverse the judgment.

Reversed.