STATE v. BEAUMONT & G. N. R. R. et al.*
(No. 59.)

(Court of Civil Appeals of Texas. Beaumont.
Jan. 27, 1916. Rehearing Denied
Feb. 10, 1916.)

1. COMMERCE ⬅️⟶8—INTERSTATE COMMERCE—
REGULATIONS.

When cars or locomotives which are required to be equipped with safety appliances under the federal Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1913, §§ 8605–8623), are used upon or pass over

a railroad which is used for interstate commerce, the federal act applies and is supreme.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.]

**2. EVIDENCE ☞20—JUDICIAL NOTICE.**

The state courts will take judicial notice that practically all of the railroads in the state are engaged in interstate commerce.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 24; Dec. Dig. ☞20.]

**3. COMMERCE ☞8—INTERSTATE COMMERCE— FEDERAL REGULATIONS.**

The federal Safety Appliance Act, enacted under Const. U. S. art. 1, § 8, subd. 3, giving Congress power to regulate interstate commerce, declares that nothing in the act shall apply to trains composed of four-wheel cars, or trains composed of eight-wheel standard logging cars, where the height of such car from the top of the rail to the center of the coupling does not exceed 25 inches, or to locomotives used in hauling such trains when such cars or trains are exclusively used for the transportation of logs. The journals of Congress show that the exception as first offered was intended to prevent regulations from requiring reshipment of coal loaded on mine cars, and that it was later extended to ordinary logging trains. Texas Safety Appliance Act (Rev. St. 1911, arts. 6709, 6710), declaring that it shall apply only to carriers engaged in intrastate commerce, purports to regulate the brakes on logging trains, etc. *Held* that, as to a railroad engaged in interstate commerce, the state laws are inoperative; Congress by its inaction and the exception clearly showing that no regulation of logging trains should be made by the states.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.]

Appeal from District Court, Polk County; L. B. Hightower, Judge.

Action by the State of Texas against the Beaumont & Great Northern Railroad and others. From a judgment for defendants, the state appeals. Affirmed.

J. L. Manry and S. H. German, both of Livingston, for the State. Chas. C. Huff and A. H. McKnight, both of Dallas, for appellees.

BROOKE, J. As filed, this was a suit for penalties aggregating $840,000 for alleged violations of the Texas Headlight Law and that part of the state Safety Appliance Act embodied in articles 6709 and 6710 of the Revised Civil Statutes of 1911. By an amended petition, the state reduced the number of alleged violations of the Headlight Law and of each of the articles of the statute mentioned to 50, and demanded a penalty of $1,000 for each such violations, a total of $150,000. Appellees filed a motion under article 335 of the Revised Civil Statutes, questioning the right of the attorneys bringing the suit to prosecute the same, and asking that they be cited to appear and show by what authority they were proceeding. At the hearing upon this motion, it was conceded by the attorneys that they were without authority to institute or prosecute the suit for penalties under the Headlight Law, not having been requested by the Railroad Commission of Texas or instructed by the Attor-

ney General to do so; and that part of the cause of action was dismissed. The court, however, sustained their power to bring and prosecute so much of the cause of action as relates to the Safety Appliance Act, holding that no request from the Railroad Commission or instruction from the Attorney General was necessary under it. But upon considering the general demurrer to the petition and a special demurrer based upon the proposition that Congress, by passing the federal Safety Appliance Acts, had covered this field of Legislation, the court held that the state Safety Appliance Act is inoperative and sustained said demurrers. Appellant having declined to amend, the case was dismissed. The sole question presented upon this appeal, therefore, is the correctness of the ruling of the trial court on these demurrers.

The allegations of appellant with reference to the violation of the Safety Appliance Acts were as follows:

"That each and every day from the 10th day of February, 1914, to the 11th day of March, 1914, Sundays excepted, and each and every day from the 1st day of May, 1915, to the 1st day of June, 1915, since the institution of this suit, Sundays excepted, the said defendants have used on their said line of railway, in Polk county, Tex., in moving intrastate traffic, one certain locomotive engine which was not equipped with a power driving wheel brake and appliances for operating the train brake system, as required by the terms of article 6709, R. S. of 1911 of the State of Texas, and the said engine so used by the defendants without said equipment and appliances, during said days aforesaid, has been used and engaged in pulling and hauling a log train, composed of standard logging cars, such cars and locomotive engine being used exclusively for the transportation of logs, wholly within the county of Polk and state of Texas; and said locomotive engine was used by said defendants at least one time each and every day during the time aforesaid and was used and operated by the said defendants wholly within the state of Texas, and was used in moving intrastate traffic only, and was in no manner engaged or used in the moving of interstate cars and in the transportation of logs as aforesaid. That by the violation of the said article 6709 of the Revised Statutes of 1911 of the State of Texas, as aforesaid, the said defendants have become liable and are liable to the state of Texas in the sum of $1,000 for each and every day said engine was so used by defendants within said Polk county, as aforesaid, and said statute has been thereby violated once each and every day during the dates aforesaid; that is, a total of 50 days, aggregating the sum of $50,000 for said violations as aforesaid."

"That each and every day from the 10th day of February, 1914, to the 11th day of March, 1914, Sundays excepted, and each and every day from the 1st day of May, 1915, to the 1st day of June, 1915, since the institution of this suit, Sundays excepted, the defendants, as such common carriers of intrastate commerce as aforesaid, have hauled and permitted to be hauled and used on said line of railroad, in Polk county, Tex., and wholly within the state of Texas, one certain locomotive, tender, cars, and similar vehicles, employed in moving intrastate traffic only and wholly within the county of Polk and state of Texas, which said locomotive, tender, cars, and similar vehicles were not equipped with couplers coupling automatically by impact, and which could be coupled and uncoupled without the necessity of men going between the

ends of locomotives, as is required by article 6710, R. Statutes of 1911 of the State of Texas, and the said locomotive, tender, cars, and similar vehicles so hauled and permitted to be hauled and used by defendants without said equipment and appliances have been used and employed and engaged in pulling and hauling a log train, composed of standard logging cars, such locomotive, tender, cars, and similar vehicles and logging cars being used exclusively for the transportation of logs, wholly within the county of Polk and state of Texas; and the same was in no manner and at no time engaged in the moving of interstate commerce, but was wholly used in the transportation of intrastate traffic, as aforesaid, wholly within the county of Polk and state of Texas. That by reason of the aforesaid violations of said article 6710, R. S. 1911, of the State of Texas, the said defendants have become and are liable to the state of Texas in the sum of $1,000 for each and every violation thereof, to wit, one violation thereof each day for the time and times aforesaid, or a total of 50 days, making an aggregate of $50,000 for which said defendants are liable to the state of Texas for said violations as aforesaid."

The special exception of appellee was as follows:

"To the third and fourth paragraphs, because articles 6709 and 6710 of the Revised Statutes of 1911, upon which the same are based, cover a field of legislation of which the Congress of the United States has lawfully taken possession under subdivision 3. § 8, art. 1, of the Constitution of the United States, in the passage of the Safety Appliance Acts, approved March 2, 1893, March 2, 1903, and April 14, 1910. The said articles of the Texas statute are void or inoperative, the acts of Congress covering the same subject-matter being supreme."

By appellant's first assignment of error, the action of the court below is assailed in sustaining the general demurrer of defendants to plaintiff's first amended original petition, because said petition alleges and states a good and sufficient cause of action under the laws of Texas.

Appellant's second assignment of error is as follows:

"The court erred in sustaining special exception of defendant Beaumont & Great Northern Railroad and in holding the state Safety Appliance Act invalid and inoperative, because the same covers a field of legislation over which Congress cannot lawfully exercise authority, and in which it has expressly declined to legislate, leaving the same free for the exercise of the police power of the state of Texas; and said Safety Appliance Act deals with instrumentalities and agencies of commerce local in their nature and application, and over which Congress has expressly declined to act, and as to which Congress has adopted the regulations established by the state."

The assignments will be considered as a whole.

[1-3] As stated above, there is but one question for decision in this case. It has been settled by the Supreme Court of the United States that, when cars or locomotives which are required to be equipped with safety appliances under the federal act are used upon or pass over a railroad that is used for interstate commerce, then the federal act applies and is supreme.

Articles 6709 and 6710, Revised Civil Statutes of Texas, read as follows:

"Art. 6709. It shall be unlawful for any common carrier engaged in intrastate commerce by railroad within the state of Texas to use on its lines in moving intrastate traffic within said state any locomotive engine not equipped with a power driving wheel brake and appliances for operating the train brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose, or to run any train in such traffic that has not all of the power or train brakes in it used and operated by such engineer, or to run any train in such traffic that has not at least seventy-five per centum of the cars in it equipped with power or train brakes; and for the purpose of fully carrying into effect the objects of this and the five succeeding articles, the railroad commission of Texas may, from time to time, after full hearing by public order, increase the minimum percentage of cars in any train which shall be equipped with power or train brakes; and after such minimum percentage has been so increased it shall be unlawful for any common carrier to run any train in such traffic which does not comply with such increased minimum percentage.

"Art. 6710. It shall be unlawful for any common carrier, engaged in commerce as aforesaid, to haul or permit to be hauled or used on its line of railroad within the state of Texas, any locomotive, tender, car or similar vehicle employed in moving intrastate traffic within the said state which is not equipped with couplers, coupling automatically by impact, and which can be coupled and uncoupled without the necessity of men going between the ends of locomotives, tenders, cars and similar vehicles."

The Beaumont & Great Northern Railroad is a highway of interstate commerce, and it is admitted that, if the federal Safety Appliance Acts apply to the operation of logging cars or log trains and locomotives employed in pulling and hauling logging trains and cars exclusively in the transportation, then the state Safety Appliance Act has been suspended and is inoperative.

The exception incorporated in the federal Safety Appliance Acts is as follows:

"Provided, that nothing in this act contained shall apply to trains composed of four-wheel cars or to trains composed of eight-wheel standard logging cars where the height of such car from top of rail to center of coupling does not exceed twenty-five inches, or to locomotives used in hauling such trains when such cars or locomotives are exclusively used for the transportation of logs." Articles 8605 to 8623, inclusive.

It is contended by the appellant that Congress, although having entered the field of legislation, has not legislated with reference to the particular equipment and agencies sought to be made subject to the state law in this case, and that, Congress having failed to legislate, it must be determined whether or not its failure or declination to act is a declaration on the part of Congress that these agencies shall remain free from legislation and control, either by Congress or the states, or is the nonaction of Congress a declaration that the same shall be left by Congress to be regulated by and made subject to the police power of the respective states.

It is further contended by appellant: That in the regulation of interstate commerce there are three powers, viz., the exclusive state

power, exclusive national power, and the concurrent power; and that while it may be admitted that in those cases where the laws are from their nature national in their character instead of being of local nature, and affecting interstate commerce incidentally, the silence of Congress indicates that it wills that such commerce shall be free and untrammeled by state legislation to this extent, and that for the sake of argument it might be further admitted that the aegncies sought to be regulated in this case do not belong exclusively to the state power, but it is contended that the regulation of these instrumentalities (logging cars and logging trains used exclusively in the transportation of logs) does not require laws national in their character and scope, nor does the operation of such agencies affect interstate commerce in its nation-wide aspect; hence it necessarily follows that these instrumentalities fall in that class where the power to control is concurrent. That in this class fall subjects of a local nature, and that "immense mass of legislation usually referred to as the police power of the state, which may affect incidentally or facilitate foreign or interstate commerce, and regulate, for the protection of the health, morals, or general welfare of the state, the instrumentalities of commerce, so long as Congress itself does not cover the subject with regulations which conflict with the state regulations."

Appellant cites the cases of Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; M., K. & T. Ry. Co. v. Harris, 234 U. S. 412, 34 Sup. Ct. 790, 58 L. Ed. 1377, L. R. A. 1915E, 942; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182; Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108; G. C. & S. F. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910; Covington Bridge Co. v. Kentucky, 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962—as upholding its views.

It is further argued by appellant: That, in view of the exception stated in the federal statute and the decisions above referred to, there is no conflict whatever between the federal and state law, so far as it is sought to apply them, as in this case, to logging cars, logging trains, etc., and that Congress has expressly exempted them from the operation of the federal law, while the state law makes no exception, but applies alike to all equipment and instrumentalities of intrastate traffic. That the state law was intended to reach and regulate that which Congress has seen fit to leave unregulated, and that the subject was one which was local in its nature, and one with which the state power was peculiarly adapted to be controlled. That the two statutes, federal and state, were enacted in pursuance of a common purpose to afford a remedy as broad as the mischief. That to hold that the state law is inoperative as applied to logging trains and equipment, even though they may be operated over a railroad used for interstate commerce, is to declare

that this traffic, which directly and indirectly involves the safety of hundreds of human lives and the general welfare of the public, is to be unrestrained and unregulated. That this traffic is not touched or affected by the federal statute which expressly exempts it from its operation and prohibitions, and that to hold that the state law has been stricken down and is impotent because Congress has entered the field of legislation is in effect to say that Congress has left this perilous traffic untrammeled and stands with the sword of its paramount authority uplifted to strike down the arm of the state if it should dare to raise it against such commerce.

On the other hand, appellees claim: That Congress, exercising the power imposed upon it by the commerce clause of the federal Constitution, has covered the whole field of legislation to which the state Safety Appliance Acts apply, and that, its enactment being superior to that of the state, no penalty can be recovered for a violation of the law. That the articles 6709 and 6710, while limited to intrastate commerce, are not confined to common carriers engaged exclusively in such commerce. That they apply as well to carriers engaged in both intrastate commerce and interstate commerce. That Congress has passed Safety Appliance Acts containing substantially the same requirements as articles 6709 and 6710, which are applicable to all railroads on which interstate commerce is handled. The record shows that appellees handle interstate commerce over the line of railroad involved in this case. The question of a conflict in the exercise of power by the state Legislature, on one hand, and by Congress, on the other hand, therefore, at once suggests itself.

Congress, in passing the Safety Appliance Acts, proceeded under authority given it by the commerce clause of the federal Constitution. The supremacy of Congress in the field of interstate commerce is not now open to question, and, when it enters this field, the right of the states to legislate with respect to the subject-matter covered by its enactments, or to enforce legislation previously enacted, ceases to exist.

In Northern Pacific Ry. Co. v. Washington, 222 U. S. 378, 32 Sup. Ct. 161, 56 L. Ed. 237, the court said:

"It is elementary, and such is the doctrine announced by the cases to which the court below referred, that the right of a state to apply its police power for the purpose of regulating interstate commerce, in a case like this, exists only from the silence of Congress on the subject, and ceases when Congress acts on the subject or manifests its purpose to call into play its exclusive power."

In Chicago, Rock Island & Pacific Ry. Co. v. Hardwick Farmers' Elev. Co., 226 U. S. 435, 33 Sup. Ct. 176, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203, it is said:

"The elementary and long-settled doctrine is that there can be no divided authority over interstate commerce and that the regulations of Congress on that subject are supreme."

In Erie R. Co. v. New York, 233 U. S. 681, 34 Sup. Ct. 759, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138, it is said: "The relative supremacy of the state and national power over interstate commerce need not be commented upon. Where there is conflict, the state legislation must give way. Indeed, when Congress acts in such a way as to manifest its purpose to exercise its constitutional authority, the regulating power of the state ceases to exist."

In the case of M., K. & T. v. Harris, 234 U. S. 417, 34 Sup. Ct. 792, 58 L. Ed. 1377, L. R. A. 1915E, 942, it is said:

"It is, of course, settled that, when Congress has exerted its paramount legislative authority over a particular subject of interstate commerce, state laws upon the same subject are superseded."

In Southern Ry. Co. v. Railroad Commission of Indiana, 236 U. S. 439, 35 Sup. Ct. 304, 59 L. Ed. 661, the court said:

"Until Congress entered that (the safety appliance) field, the states could legislate as to equipment in such manner as to incidentally affect without burdening interstate commerce. But Congress could pass the Safety Appliance Act only because of the fact that the equipment of cars moving on interstate roads was a regulation of interstate commerce. Under the Constitution the nature of that power is such that when exercised it is exclusive, and ipso facto supersedes existing state legislation on the same subject."

Counsel for appellant concedes the correctness of this proposition, and frankly admits that the state law is inoperative as to railroad equipment generally, and it is said that they are induced to this by the opinions in Southern Ry. Co. v. U. S., and Southern Ry. Co. v. Railroad Commission of Indiana; the first case expressly holding that the federal law applies to all equipment used on railroads engaged in interstate commerce, and the other, that the acts of Congress are exclusive. But appellant insists that by the proviso to section 3 of the original federal Safety Appliance Act, as amended in 1896, Congress has left the states free to regulate safety appliances on logging equipment as they deem proper.

It is argued that counsel for appellant mistakes the purpose of Congress in enacting the proviso, and that clearly what Congress intended was, not that the states might regulate logging equipment, but that it should go unregulated.

It is conceded that the federal acts apply to all equipment used on interstate highways, except logging equipment. What reason is there for leaving logging equipment to the jurisdiction of the states? The necessity for federal regulation of this class of equipment, if it ought to be regulated, is as great as the necessity for such regulation of other equipment; and, Congress having entered the field, the only reasonable conclusion is that it made all the regulations deemed necessary.

It is further contended: That, if Congress has occupied the field, the nature of its enactment is immaterial. It legislates as truly when it states that a subject shall be exempt from its regulations as when it brings the subject under them. In other words, its manifestation of a purpose that any subject shall go unregulated is as effective to prevent action by the states as the strictest regulations would be, and that inhibitive congressional regulation is not necessary. That a state cannot go further than Congress has seen fit to go. That the only test is whether Congress has manifested a purpose to enter the field, and that, if it has, its occupation is exclusive.

In Houston v. Moore, 5 Wheat. 1, 5 L. Ed. 19, Mr. Justice Washington, speaking for the court, said:

"I am altogether incapable of comprehending how two distinct wills can, at the same time, be exercised in relation to the same subject, to be effectual, and, at the same time, compatible with each other. If they correspond in every respect, then the latter is idle and inoperative; if they differ, they must, in the nature of things, oppose each other, so far as they do differ. If the one imposes a certain punishment, for a certain offense, the presumption is that this was deemed sufficient, and, under all circumstances, the only proper one. If the other Legislature impose a different punishment, in kind or degree, I am at a loss to conceive how they can both consist harmoniously together.

"I admit that a legislative body may, by different laws, impose upon the same person, for the same offense, different and cumulative punishments; but then it is the will of the same body to do so, and the second, equally with the first, law, is the will of that body; there is therefore, and can be, no opposition of wills. But the case is altogether different where the laws flow from the will of distinct co-ordinate bodies."

In Priggs v. Pa., 41 U. S. (16 Pet.) 539, 10 L. Ed. 1060, it is said:

"If Congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that the state Legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject-matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it."

In Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508, the court says:

"The grant of power to Congress in the Constitution to regulate commerce with foreign nations and among the several states, it is conceded, is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the states. It follows that any legislation of a state, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority. As the regulation of commerce may consist in abstaining from prescribing positive rules for its conduct, it cannot always be said that the power to regulate is dormant because not affirmatively exercised. And when it is manifest that Congress intends to leave that commerce, which is subject to its jurisdiction, free and unfettered by any posi-

tive regulations, such intention would be contravened by state laws operating as regulations of commerce as much as though these had been expressly forbidden. In such cases, the existence of the power to regulate commerce in Congress has been construed to be not only paramount but exclusive, so as to withdraw the subject as the basis of legislation altogether from the states."

The case of Northern Pacific R. Co. v. Washington seems to be applicable. The federal Hours of Service Act was passed March 4, 1907 (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. 1913, §§ 8677-8680]), but did not become effective until March 4, 1908. The state of Washington undertook to enforce during this interim an act regulating the hours of service of railway employés passed by its Legislature, but the Supreme Court said this could not be done. After stating the supremacy of Congress in this field of legislation, the court said:

"This being the conceded premise upon which alone the state law could have been made applicable, it results that as the enactment by Congress of the law in question was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the state. To admit the fundamental principle, and yet to reason that, because Congress chose to make its prohibitions take effect only after a year, the matter with which Congress dealt remained subject to state power, is to cause the act of Congress to destroy itself; that is, to give effect to the will of Congress as embodied in the postponing provision for the purpose of overriding and rendering ineffective the expression of the will of Congress to bring the subject within its control—a manifestation arising from the mere fact of the enactment of the statute. * * *

"But if we pass these considerations and consider the issue before us as one requiring merely an interpretation of the statute, we are of opinion that it becomes manifest that it would cause the statute to destroy itself to give to the clause postponing its operation for one year the meaning which must be affixed to it in order to hold that during the year of postponement state police laws applied. In the first place, no conceivable reason has been, or we think can be, suggested for the postponing provision if it was contemplated that the prohibitions of state laws should apply in the meantime. This is true because, if it be that it was contemplated that the subject dealt with should be controlled during the year by state laws, the postponement of the prohibitions of the act could accomplish no possible purpose. This is well illustrated by this case, where, by the ruling below, a state regulation substantially similar to that contained in the act of Congress is made applicable. In the second place, the obvious suggestion is that the purpose of Congress in giving time was to enable the necessary adjustments to be made by the railroads to meet the new conditions created by the act, a purpose which would, of course, be frustrated by giving to the provision as to postponement a significance which would destroy the very reason which caused it to be enacted."

It is claimed further that Congress intended to cover the whole field of equipment used on interstate highways, and that it is clearly shown by the Act of March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. 1913, §§ 8613-8615), which states that the provisions and requirements of the federal law relating to train brakes, automatic couplers, grab-irons, and to the height of drawbars, shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce.

In Southern Ry. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72, the Supreme Court says:

"It must be held that the original act, as enlarged by the amendatory one, is intended to embrace all locomotives, cars, and similar vehicles used on any railroad which is a highway of interstate commerce."

In Southern Ry. Co. v. Railroad Commission of Indiana, 236 U. S. 439, 35 Sup. Ct. 304, 59 L. Ed. 661, the court said:

"Without, therefore, discussing the many cases sustaining the right of the states to legislate on subjects which, while not burdening, may yet incidentally affect interstate commerce, it is sufficient here to say that Congress has so far occupied the field of legislation relating to the equipment of freight cars with safety appliances as to supersede existing and prevent further legislation on that subject."

A history of the legislation, it is claimed, also makes manifest the purpose of Congress to cover the whole field. The act, as originally introduced, did not contain an exemption clause, but during its discussion in the Senate, and after its passage by the House, Sen. Blodgett offered the following amendment:

"Provided that nothing in this act shall apply to trains composed of four-wheel cars or to locomotives used in hauling such trains."

In stating the reason for the amendment, he said:

"I presume most Senators understand that coal from the mines is transported to the seaboard in four-wheel cars. The custom is to run such cars to the junction points of lateral roads and from those junction points to the mines where they are loaded. The four-wheel cars are used because it would be practically impossible to run an eight-wheel car to the mines over the sharp grades and around the sharp curves necessary in reaching the mines. The coupling construction is a peculiar one, and is adapted to that peculiar work. A hook arrangement and link are used, with considerable lost motion between the cars.

"It is necessary to use that appliance, as I said, in order to go around the sharp curves. I believe it would be practically impossible to place the train brake and automatic coupler upon cars such as are used in that traffic, and, if the bill is not amended as I propose, it will compel a reshipment of coal at all the junction points on the lateral roads to the main stem." Discussion of H. R. 9350, Cong. Rec. vol. 24, p. 1477.

The amendment was adopted and concurred in by the House, and the President approved the bill as amended. Before the act took effect, however, the proviso was changed to its present form, which is as above quoted.

Preceding the adoption of the amended proviso by the Senate, Sen. Wolcott, stating the reason for it, said:

"There has just come over from the other House a bill to amend the act to promote the safety of employés and travelers. A similar bill was unanimously reported from the Committee on Interstate Commerce of the Senate, the effect of which is merely to provide that

trains used exclusively for logging may be relieved from the provisions of the act. The cars used in logging trains, of which there are about 400 in the United States, are only 24 inches high, and it is physically impossible to equip them with grabirons and other appurtenances required by law. The act goes into force very soon, and I hope the bill may now be passed. It has passed the House of Representatives and a similar bill has passed our committee unanimously." Discussion of H. R. 5828, Cong. Rec. vol. 28, pt. 4, p. 3129.

Therefore it is claimed: That nothing in any of the cases cited by appellant applies to this particular case, and that those cases do not conflict with the ones upon which appellees rely. That they simply announce and apply the principle that in matters of this class the states may not dispute —that in matters of this class the states may legislate until Congress enters the particular field covered by the state legislation, and that there is nothing in them that can be construed as authority for the proposition that the state law can be enforced as to logging equipment. That none of them involves an attempt by a state to regulate a matter which Congress has said shall be exempt from regulation, and that the legislation sustained by them was sustained, not because of a divided authority, but because it was held that as to the particular subject-matter Congress had not manifested a purpose to deal with it.

We are referred to the following cases to sustain appellees' position: Articles 8605–8623, U. S. Compiled Statutes, 1913; Southern Ry. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; Southern Ry. Co. v. Railroad Commission of Indiana, 236 U. S. 439, 35 Sup. Ct. 304, 59 L. Ed. 661; Northern Pac. Ry. Co. v. Washington, 222 U. S. 370, 32 Sup. Ct. 160, 56 L. Ed. 237; Chicago, Rock Island & Pac. Ry. Co. v. Hardwick Farmers' Elev. Co., 226 U. S. 426, 33 Sup. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203; Erie R. R. Co. v. New York, 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; M., K. & T. v. Harris, 234 U. S. 412, 34 Sup. Ct. 790, 58 L. Ed. 1377, L. R. A. 1915E, 942; Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511; Texas & P. R. Co. v. U. S., 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341; Southern Ry. Co. v. Reid, 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257; Houston v. Moore, 18 U. S. (5 Wheat.) 1, 5 L. Ed. 19; Prigg v. Pennsylvania, 41 U. S. (16 Pet.) 539, 10 L. Ed. 1060; Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; Charleston & W. C. Ry. Co. v. Varnville Furniture Co., 237 U. S. 597, 35 Sup. Ct. 715, 59 L. Ed. 1137, decided by the United States Supreme Court, June 1, 1915; Congressional Record, vol. 24, p. 1477; Congressional Record, vol. 28, part 4, p. 3129.

By appellees' second counter proposition, it is claimed that the state Safety Appliance Act being in part inoperative, and the part, if any, which it was within the juris-diction of the state Legislature to pass being so intermingled with the part over which the Legislature had no jurisdiction that one cannot be separated from the other and the court cannot say the good would have been passed without the bad, the act must fail in whole, citing Western Union Tel. Co. v. State, 62 Tex. 630; Ill. Central Ry. Co. v. McKendree, 203 U. S. 529, 27 Sup. Ct. 153, 51 L. Ed. 298; Employers' Liability Cases, 207 U. S. 501, 28 Sup. Ct. 141, 52 L. Ed. 297; El Paso & Northeastern Ry. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106; State v. Mo. Pac. Ry. Co., 212 Mo. 658, 111 S. W. 500.

The argument in favor of this proposition is very persuasive. The following is from the Employers' Liability Cases:

"As the act before us by its terms relates to every common carrier engaged in interstate commerce and to any of the employés of every such carrier, thereby regulating every relation of a carrier engaged in interstate commerce with its servants and of such servants among themselves, we are unable to say that the statute would have been enacted had its provisions been restricted to the limited relations of that character which it was within the power of Congress to regulate. On this subject the opinion in the Trade-Mark Cases, 100 U. S. 82 [25 L. Ed. 550], where an act of Congress concerning trademarks was held to be unconstitutional, because too broad in its scope, is pertinent and instructive. The court said (page 99 of 100 U. S. [25 L. Ed. 550]: 'If we should, in the case before us, undertake to make by judicial construction a law which Congress did not make, it is quite probable we should do what, if the matter were now before that body, it would be unwilling to do, namely, make a trade-mark law which is only partial in its operation, and which would complicate the rights which parties would hold, in some instances under the Act of Congress, and in others under state law. Cooley, Const. Lim. 178, 179; Commonwealth v. Hitchings, 5 Gray (Mass.) 482.'"

It was held that the provisions of the statute were inseparable as to the matters mentioned, and therefore they could not stand as to any employés.

The Illinois Central Ry. Co. v. McKendree Case, supra, involved the validity of an order of the Secretary of Agriculture, covering both intrastate and interstate commerce. The court said it had no means of knowing whether the Secretary would have made the order if limited to interstate commerce, it being in terms single and indivisible, and declared it void in whole. The following from United States v. Reese, 92 U. S. 221, 23 L. Ed. 563, was quoted with approval:

"We are therefore directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose, we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking

out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall together. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only."

In Railway Co. v. Gutierrez, supra, it is stated by the court that the question to be considered in cases of this kind is as follows: "It remains to inquire whether it is plain that Congress would have enacted the legislation had the act been limited to the regulation of the liability to employés engaged in commerce within the District of Columbia and the territories. If we are satisfied that it would not, or that the matter is in such doubt that we are unable to say what Congress would have done omitting the unconstitutional feature, then the statute must fall"—citing Ill. Central Ry. Co. v. McKendree, supra, and Employer's Liability Cases, 207 U. S. 501, 28 Sup. Ct. 141, 52 L. Ed. 297.

The Western Union Telegraph Company Case well illustrates the application of the principle. It involved the question whether a law taxing telegraph messages, which had been declared void as to interstate telegrams by the Supreme Court of the United States, could be enforced as to state telegrams. The court held that it could not, saying: "We are of the opinion that the different parts of the act under consideration are so intimately connected that the invalidity of a part of the law renders the entire law invalid."

It is claimed by appellees that to apply this test no part of the act can stand, even if it be admitted that Congress has not occupied the whole field. The state law applies to all equipment used in handling intrastate commerce. Logging equipment, conceding that the logging business is so conducted as to make it intrastate commerce—a question not now before the court—is a very small, perhaps not one-hundredth, part of such equipment. Practically all the railroad companies in the state are engaged in interstate commerce, a fact which the court judicially knows (State v. Mo. Pac. Ry. Co., 212 Mo. 658, 111 S. W. 500), and therefore, upon any theory, the federal law, which had been long in force when the state acted, covers the greater part of the equipment to which the state law is applicable. That at the time the state law was passed, however, the opinion in Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72, had not been handed down, and the Legislature doubtless thought the federal law would be construed as limited to equipment used in handling interstate commerce. At any rate, it intended that its enactment should be enforced as to all equipment except that used in interstate commerce. But since the Supreme Court has held this cannot be done, it necessarily follows that the state law must have a much more limited application than the Legislature intended.

We have examined all the decisions refer-

red to and cited, together with all decisions available, with reference to matters applicable. Counsel have been happy in their presentation of this cause, and have been of great assistance to the court. After a most careful investigation, we are led to the conclusion that Congress, exercising power conferred upon it by the commerce clause of the federal Constitution, has entered upon and covered the field of legislation to which the state Safety Appliance Act (articles 6709, 6710), applies, and that, its enactment being superior to that of the state, no penalties can be recovered for a violation of the state law in that respect.

We therefore are of opinion that the trial court did not commit error in sustaining demurrers to plaintiff's petition. Appellant's assignments are overruled, and the judgment of the lower court is in all things affirmed.