**PREFERRED LIFE INSURANCE COMPANY, Appellant,**

v.

Mathew DORSEY, Appellee.

No. 3267.

Court of Civil Appeals of Texas. Waco.

June 23, 1955.

Rehearing Denied July 25, 1955.

W. S. Barron, Jr., Alto B. Cervin, Henry M. Amlin, A. George Biggs, Dallas, for appellant.

White & Yarborough, Dallas, for appellee.

TIREY, Justice.

This is a suit on an accident and sickness policy of insurance. Trial was to the court without a jury. In the decree we find the following recital:

"* * * the court finds the facts in favor of plaintiff and against defendant and overrules defendant's plea in abatement and finds that plaintiff is entitled to recover the principal sum of $1560.00, with six per cent interest thereon in the sum of $84.61, plus a twelve per cent penalty in the sum of $187.20, and a reasonable attorney's fee in the trial court of $750.00, and an additional attorney's fee of $300.00 in the event of an appeal to the Court of Civil Appeals."

The record shows that the sum of $1,560 awarded is the maximum possible total disability benefits provided by the policy. There was no request for findings of fact and conclusions of law and none filed. The Insurance Company seasonably perfected its appeal to the Dallas Court of Civil Appeals and the cause is here on transfer order of our Supreme Court.

The judgment is assailed on eight points. They are substantially: (1) in overruling appellant's plea in abatement; (2) because the proof showed appellee to have an undisclosed material pre-existing physical condition sufficient to invalidate the policy; (3) in overruling appellant's Special Exception No. 1; (4) in awarding appellee the sum of $750 attorney's fee in the trial court, such sum being excessive as a matter of law; (5) in awarding appellee the sum of $300 as additional attorney's fee in the event of an appeal; (6) in allowing appellee to file his trial amendment; (7) in rendering judgment for appellee for $1,560 when under the terms of the policy appellee was not entitled to such amount; and (8) in rendering judgment for appellee for $1,560 when the policy provided that appellant's liability was conditioned on the existence of other insurance of appellee. Appellee challenges each of the foregoing points.

Testimony was tendered to the effect that appellee is an adult colored man and cannot read or write and that appellant's agent came to appellee's home and talked him into buying the policy of insurance; that later in the same year appellee attempted to get out of the way of a car when he was crossing the street, slipped and fell across the curb and broke his hip; appellee was hospitalized and an operation was performed on his hip; from the time of the accident, November 3rd or 4th, 1952, down to the date of the trial he was not able to work and hardly able to get out of bed; that it was necessary for appellee to return later to the hospital and have a second operation on his hip; that after he got to where he could get out in January 1953 he went to appellant's office and turned in the blank which was given to him when the policy was issued; that he carried the blank to Parkland Hospital where he had been hospitalized, had it filled in and then carried it to the insurance company office; that when he turned in the blank which had been filled out, the insurance agent told him he would have to have the name of the doctor; that he told the agent he did not know the doctor's name and the agent told him to go to Parkland Hospital and get the name and this appellee did and took it back to the insurance company's office; that while appellee was in the insurance office he talked to appellant's agent and told him to go to Parkland Hospital or call and ask about his condition and the hospital would let them know; that on January 20, 1953, appellee's original attorneys wrote appellant a letter advising them of appellee's fractured hip and made demand for the policy benefits. We quote the pertinent parts of this letter:

"We have been employed by the above named to represent him in an action against you growing out of an accident which he suffered on November 3, 1952, which he sustained a fractured hip as a result of a fall. He ad-

vises me that he was treated on November 3 by a regular licensed physician and surgeon of Dallas County, and that an operation was performed in the Parkland Hospital for said injury.

"His policy with your company, dated October 9, 1952, and he suffered this accident on November 3, 1952. His policy was fully paid up at that time, and your policy schedule shows that the insured is entitled to receive $15.00 each week as long as he is disabled on account of any accident.

"We here now make demand upon you on behalf of the insured in the sum of $180.00, 12 weeks disability benefits up to date, and a like sum of $15.00 each week in the future that the insured is disabled. If we do not receive your check for this amount within 5 days from the date of this letter, Matthew Dorsey has authorized us to file suit against you, not only for this amount, but for anticipatory loss. Please be advised that we have an assignment of interest in this policy; therefore, any future correspondence should be directed to this office."

On January 24, 1953, the appellant replied to the foregoing letter and we quote the pertinent part thereof:

*"While it may appear that the company has been completely negligent on the above captioned case, the writer of this letter has discussed the case with Mr. Dorsey on several occasions advising him of the proofs of loss required by the company in order to expedite the claim.*

"Mr. Dorsey brought to this office a statement of the attending physician and claimant's statement on routine standardized claim forms used by this company for purposes of presentation of a hospitalization claim. I explained to Mr. Dorsey that the company was primarily interested in what the attending physician or surgeon who attended him for the disability had to say about the condition involved. I also advised

him that it would be necessary that we have a written statement from the doctor who attended him. On one occasion I gave him a written statement as to what the company required as proofs of loss on his claim.

"The policy provides, in additional provision No. 2 that 'if the insured is disabled for a period of more than 30 days, the insured or the insured's representatives shall furnish the company at the end of each 30 days thereafter with affirmative proof of continuance of such injury, together with a report from the attending physician or surgeon stating the condition of the insured.' The company has never received this statement for the first 30 days nor has it received any subsequent statements from the attending physician or surgeon. In fact, the company has never obtained the physician's or surgeon's name who was in attendance on the Dorsey case. I assure you that I am as interested as you to see that this case is expedited.

"If you will have the physician or surgeon who attended Mr. Dorsey send us a written statement as to the disability involved for each 30 days of disability, I am sure that we can come to some amicable agreement on settlement. If, after you read this letter, you feel that it is necessary to take this into a court of law, the company will necessarily defend on the basis that proper proofs of loss as provided by the policy have never been filed in this office."

H. A. Armstrong was called to testify by appellant and pertinent to this discussion he testified in part as follows: that he was manager of the Claims Department and had been for approximately two years; that he was in the office of appellant company when appellee came to the office in November, 1952, after he had gotten out of the hospital; that the policy was issued on October 9, 1952; "I never denied liability on this claim because of insufficient proof of loss * * *. I have never denied Mr. Dorsey has a hip broken. I just wanted proofs of

loss to determine the nature of the claim and amount of liability by the company, if any; * * * Q. You knew the Negro couldn't read or write, didn't you? A. Not at the time, I don't think. * * * Q. * * * from your experience as a claim man, did that not lead you to believe the man had disability from a broken hip? A. Yes, a person is ordinarily disabled from a broken hip." The witness further testified to the effect that he went to the Parkland Hospital after the suit was filed and read the records kept there concerning appellee, and that the records showed that appellee was hospitalized with a broken hip around November 4, 1952; "* * * you satisfied yourself by reading the hospital records he was there confined with a broken hip, disabled and in bed, but you still wanted something filed to show you that that was right; is that it? A. No. The A. & H. policy issued to him provides for a doctor's statement of the length of disability and what have you, and I was merely * * *. A. Well, I would have to qualify that. I would say 'No'. All I wanted was a statement from the attending physician on this particular—Q. Well you knew Parkland Hospital was a City-County Hospital, didn't you? A. Yes * * *." The witness further testified to the effect that the policy was in full force and effect on November 4, 1952;

"Q. So you are satisfied in your own mind he had a broken hip on November 4, 1952? A. Yes.

"Q. So that the only thing left in your mind you are making a contention about, as far as the medical was concerned, was that you didn't have a doctor's statement saying how long he was going to be disabled. That is what it boils down to. A. We didn't have proofs of loss and couldn't pass on the claim, is what I am saying. That is my contention.

"Q. And the whole basis for that contention and turning his claim down is that you didn't have a doctor's statement as to how long he was going to

have the disability. A. We have never turned this claim down."

■ Appellant went to trial on its second amended original answer. In addition to the plea in abatement urged (which plea was grounded on the failure of the appellee to comply with the notice provisions of the policy), said amended answer specifically set out four answers in the application for the policy wherein it charged that the appellee made false and fraudulent answers to the questions which were material facts and matters concerning the writing of the policy and that it relied on such false statements in issuing the policy in suit. Appellant specifically alleged that appellee is estopped to assert any cause of action against it by reason of the fraudulent representations and that the policy in suit was void from its inception and was of no force and effect and appellant tendered into the registry of the court the amount of the premiums paid by plaintiff on the policy. It prayed that the suit be abated and further prayed that appellee take nothing by his suit. It is obvious that the appellant's proof is not in accord with its pleadings; however, that conflict was resolved by the trial judge. We think perhaps we should say that the statement of the rule by our Supreme Court in Sanders v. Aetna Life Ins. Co., 146 Tex. 169, 205 S.W.2d 43, 44, points 1 and 2, is particularly applicable here. That statement is: "It is familiar law that provisions of an insurance policy regarding notice and proof of loss are for the benefit of the insurance company and may be waived by it, and that a denial by it of liability under the policy is a waiver of proof of loss enabling the insured to maintain a suit on the policy without furnishing such proof." Our Supreme Court has not seen fit to change the statement nor the application of this rule, and we think it is applicable and controlling here.

■■ Moreover, no principle of our law is more firmly settled than the one in this state to the effect that in order to void a policy of insurance because of misrepresentation, the burden is on the insurer to

plead and prove not only that the answers made by the insured were false or untrue, but that the insured knew or should have known that they were untrue and that he made them wilfully and with the intent of inducing the insurer to issue the policy. Clark v. National Life & Acc. Ins. Co., 145 Tex. 575, 200 S.W.2d 820, points 5 and 6, pp. 822, 823. Our view is that appellant failed to carry its burden in this behalf. Moreover, no principle is better settled than the one to the effect that "Opinion testimony does not establish any material fact as a matter of law." See Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, 346, points 1–3.

Since this cause was tried without the aid of a jury, we are bound by the following rule: "The rule is well settled that the judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings." Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. See also cases collated under 4 Tex.Digest, Appeal & Error, ▮

Notwithstanding the admission made by appellant in its letter of January 24th concerning this claim, we have read the Statement of Facts very carefully and we can understand how the trial court accepted appellant's admission, at face value, to the effect that it had been completely negligent as to this claim. The record is ample to sustain this view.

We find no merit in Points 1, 2, 3, 6, 7 and 8, and each is overruled.

Point 4 complains of the action of the court in awarding attorney's fees in the sum of $750 in favor of appellee's attorney and says same is excessive as a matter of law. We have considered the testimony and under the record we think such award is not excessive, and Point 4 is overruled.

Point 5 complains of the action of the trial court in awarding appellee the sum of $300 additional as attorney's fees in the event of an appeal. Appellant in its brief says: "No authority exists in law for such an award, for the judgment is thereby made conditional and loses its binding attributes of finality. The instant judgment was not final, but conditional. It imposed a penalty upon appellant in the event of an appeal, and the extent of its operation was left to the happening of a future contingency, control of which was not within jurisdiction of the trial court. The judgment was, as to such portion thereof, void." We are in accord with this view and we think the point is controlled by the opinion of our Supreme Court in Cooksey v. Jordan, 104 Tex. 618, 143 S.W. 141 (Case 1). Our Supreme Court has not seen fit to change the rule there stated. The opinion of Justice Ramsey in the above case is clear, concise and controlling and further discussion would be of no avail; however, we think we should say that Art. 4736, Vernon's Ann.Civ.Stats., which was in force and effect at the time Cooksey v. Jordan was written, is substantially the same as Art. 3.62 of our Insurance Code, V.A.T.S., now controlling. Our Supreme Court in Kubena v. Hatch, 144 Tex. 627, 193 S.W.2d 175, held in effect that a judgment may be void in part and valid in part, provided the valid portion is not so dependent upon the invalid portion as to fall within it, and cited Cooksey v. Jordan, supra. See other cases collated under Point 4, p. 177.

In the event we are mistaken in the application of the above rule, it is our view that under all the facts and circumstances surrounding the services rendered by appellee's attorney in this behalf, that the trial court abused his discretion in awarding the additional fee of $300. See American National Ins. Co. v. Points, Tex.Civ.App., 131 S.W.2d 983 (cor. judg. w. o. j.).

Accordingly, the judgment of the trial court awarding the $300 attorney's fees in the event of an appeal to the Court of Civil Appeals by appellant is hereby declared to

be void and of no force and effect, but the judgment of the trial court in all other respects is affirmed.

Under the record here made we think that the costs of this appeal should not be taxed against appellee, and accordingly the costs of appeal are taxed against appellant under the authority of Lone Star Gas Co. v. Childress, Tex.Civ.App., 187 S. W.2d 936, and the authorities there cited.

It follows that the judgment of the trial court is affirmed in part and in part reversed and rendered.