269 F.2d 147
 KIRKHOF ELECTRIC COMPANY, a Michigan corporation, in its own
right, and as assignee of F. L. Jacobs Co., Grand
Rapids Metalcraft Division, Appellant,
v.
WOLVERINE EXPRESS, INC., Appellee.
 No. 13725.
 United States Court of Appeals Sixth Circuit.
 May 27, 1959.
 
 James E. Damon, Grand Rapids, Mich., and Williams & Damon, Grand Rapids, Mich., on brief, for appellant.
 Laurence D. Smith, of Schmidt, Smith, Howlett & Halliday, Grand Rapids, Mich., for appellee.
 Before MARTIN, Chief Judge, MILLER, Circuit Judge, and MATHES, district judge.
 MARTIN, Chief Judge.
 
 
 1
 Kirhof Electric Company brought this action against Wolverine Express, Inc., for damages to three transformers, such damages having been incurred during transportation of the transformers by the common-carrier express company. The plaintiff had placed an order with Westinghouse Electric Corporation for the three devices to be installed at the Grand Rapids Metalcraft Division of the F. L. Jacobs Company. The purchase price was $9,810.
 
 
 2
 The transformers, which were shipped by truck to the Grand Rapids plant of F. L. Jacobs Company, were found, upon arrival, to have been damaged and, consequently, they were refused by the consignee. They were, thereupon, shipped to the repair shop of Westinghouse in Chicago. After repairs, they were, upon instructions of the Kirkhof Company, shipped again to the Metalcraft Division of the Jacobs Company; but that company refused to accept them. Kirkhof then advertised them for sale, after appraisal, but was unable to find a buyer.
 
 
 3
 The evidence discloses that the Metalcraft Division of Jacobs has been for a long time one of the best customers of Kirkhof Electric Company; and it was essential to the Metalcraft Division that the transformers, which were made to conform to special requirements, be installed in compliance with the contract between Kirkhof and Metalcraft.
 
 
 4
 A conference was held on or about November 9, 1955, at which representatives of the Kirkhof Company and the Metalcraft Division were present, along with a sales engineer from Westinghouse. The conference was held at the offices of the Jacobs Company and an attempt was made to persuade that company to accept the repaired transformers as new equipment, at the original price. The Kirkhof representative and the engineer testified that, after the transformers had been repaired and shipped to Grand Rapids, they were as good functionally as they had been at the time of the original shipping from Westinghouse.
 
 
 5
 Following negotiations, the Metalcraft Division accepted the repaired devices at a valuation of $6,108.50. This price was deducted from the original price of $9,810; and an agreed settlement was made upon that basis.
 
 
 6
 Plaintiff's theory is that it should be entitled to recovery from the defendant express company of the costs for repairs, plus depreciation in value of the transformers; that the depreciated value should be determined by the price which the Metalcraft Division was willing to pay, and did pay.
 
 
 7
 The theory of the defendant-appellee is, among other points, that depreciation is not an element of damages; and that the evidence fails to establish the fact of any depreciation. The appellee insists, moreover, that the transformers, after being repaired, were as good as new and that the liability of the plaintiff-appellant to deliver them to Metalcraft at the agreed price was the result of the relationship between plaintiff-appellant and Metalcraft.
 
 
 8
 The United States District Court held that the Kirkhof Company was not acting as the agent of the Metalcraft Division at the time appellant placed the order with Westinghouse; that, on the other hand, there was an actual sale of goods by Kirkhof to Metalcraft; and that no title to the transformers passed to the Metalcraft Division of the Jacobs Company until after the conference of November 9, 1955. It was held that title to the merchandise was vested in the plaintiff-appellant when the express carrier received the transformers from Westinghouse; and that the risk of loss and the right to recover was in the appellant Kirkhof.
 
 
 9
 The appellee carrier, though denying negligence, has admitted liability for the damages, including the cost of repairs and the cost of shipping the transformers to and from the repair station. It tendered this amount into the registry of the court.
 
 
 10
 After discussing pertinent authorities in relation to the measure of damages, the District Judge thus analyzed the nub of the case: 'When the transformers in question had been repaired and were guaranteed in the same manner as upon original manufacture and shipped to Grand Rapids, plaintiff through its president and its vice-president was satisfied that the transformers were new within the meaning of the law relating to measure of damage. They were so satisfied of this fact that they were willing to make every effort, as they stated, to persuade their best customer to accept the transformers at the original price of $9,810.00. If the plaintiff was so satisfied it is difficult to understand how it can come before this court and attempt to force the defendant carrier to pay a greater amount in damages because of the inability of plaintiff's executives to persuade a customer to accept the goods. The burden of the customer relations and the cost of maintaining the same between Kirkhof and Metalcraft is the responsibility of Kirkhof and not the responsibility of the defendant carrier.
 
 
 11
 'For the reasons herein stated the court is satisfied that the plaintiff is entitled to recover the cost of repairs, plus the cost of shipping, plus the cost of certain advertising, all of which has been deposited with the Clerk of this Court by the defendant. Defendant having made a proper tender which was refused, defendant may have costs.'
 
 
 12
 This opinion is practically a re-writing of the reasoning of District Judge Kent in his opinion 175 F.Supp. 43. In view of the dissent of Judge Miller from the opinion of the majority, however, we consider it necessary to pursue the course adopted.
 
 
 13
 The judgment of the district court is affirmed.
 
 
 14
 SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).
 
 
 15
 It is true that in some cases the measure of damage in the case of personal property which has been damaged but not destroyed is the cost of the repairs. This is not the rule, however, where the reasonable market value of the property damaged after being repaired is less than its reasonable market value immediately before the accident. In such cases the resulting depreciation in value is a proper element of damage in addition to the cost of repair. General Construction Co. v. Kemplin, 309 Ky. 587, 588-589, 218 S.W.2d 384; Broadie v. Randall, 114 Kan. 92, 216 P. 1103, 32 A.L.R. 708; Byrne v. Western Pipe & Steel Co., 81 Cal.App. 270, 253 P. 776; Cook v. Packard Motor Car Co., 88 Conn. 590, 92 A. 413, L.R.A.1915C, 319; Latham v. Cleveland, C.C. & St. L.R. Co., 164 Ill.App. 559; Yawitz Dyeing & Cleaning Co. v. Erlenbach, Mo.App., 221 S.W. 411; Cooper v. Knight, Tex.Civ.App., 147 S.W. 349; Metcalf v. Mellen, 57 Utah 44, 192 P. 676; Southern Bus Co. v. Simpson, 214 Ark. 323, 215 S.W.2d 699; Merchants Shippers Association v. Kellogg Express & Draying Co., 28 Cal.2d 594, 170 P.2d 923; Houchen v. Oregon-Washington R. & Nav. Co., 103 Wash. 598, 175 P. 316. In Restatement, Law of Torts, Sec. 928, the rule is stated as follows:
 
 
 16
 'Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
 
 
 17
 '(a) the difference between the value of the chattel before the harm and the value after the harm or, at the plaintiff's election, the reasonable cost of repair or restoration where feasible with due allowance for any difference between the original value and the value after repairs, and
 
 
 18
 '(b) the loss of use.'
 
 
 19
 The majority opinion, in eliminating the depreciation in market value after the transformers had been repaired, is not in accordance with this well settled rule. The majority opinion apparently accepts as a fact appellee's contention that the transformers, after being repaired, were as good as new, and that accordingly there was no depreciation in market value. But there is no finding of no depreciation in market value after no depreciation in market value after they had been repaired. His reference to the fact that the appellant considered the repaired and guaranteed equipment the same as new equipment is not a finding of market value. The seller's opinion of the value of the equipment which he is trying to sell is only one factor of several in the determination of reasonable market value.
 
 
 20
 It is common knowledge that new equipment which has been damaged and repaired, does not command in the market place the same respect as does new undamaged equipment of the same specifications, even though the repaired equipment may be just as good functionally and carries the same guarantee. The fact that the equipment has been damaged has a psychological effect upon the mind and judgment of a buying customer which results in a difference in the inherent value of the rapaired equipment offered for sale and its reasonable market value. General Construction Co. v. Kemplin, supra, 309 Ky. 587, 588-589, 218 S.W.2d 384.
 
 
 21
 With respect to the evidence on this question, the witness Bogdan, an employee for twenty-one years of the Clement Electric Company in Grand Rapids, and in charge of its repair shop, and also engaged in inspecting and passing upon the purchase of used equipment, testified that it was difficult to sell anything as new that had been damaged, regardless of how little the damage was, that the fact that the transformers had been damaged and repaired definitely had an effect upon the selling price, that under normal circumstances of supply and demand the repaired transformers would definitely have a depreciated value over their new value even though they carried the same guarantee as new equipment, that the market value of the equipment after being repaired was about $7,200, but that he personally would not have bought it at any price for stock purposes. Appellant was willing to accept the depreciated value of $7,200 stated by this witness.
 
 
 22
 The District Judge, in rejecting the element of depreciation in value, in which the majority opinion concurs, relied largely upon the fact that the transformers had no market value and that the price of $6,108.50 at which they were sold to the Metalcraft Division of F. L. Jacobs Company was not the true market value but an arbitrary reduced value argeed to by the appellant because of the existing customer relationship between it and the Jacobs Company.
 
 
 23
 The fact that there is no current market value established by contemporaneous sales of like property in the way of ordinary business does not prevent the party damaged from recovering the damages to which he is entitled. Where there is no such market value, other evidence is resorted to which will show the sum which in all probability would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy. Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 155-156, 45 S.Ct. 465, 69 L.Ed. 890; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123-124, 44 S.Ct. 471, 68 L.Ed. 934; Kennedy v. Treleaven, 103 Kan. 651, 175 P. 977, 7 A.L.R. 274; Jonas v. Noel, 98 Tenn. 440, 444, 39 S.W. 724, 36 L.R.A. 862. There was evidence in this case, hereinabove referred to, from which such a finding could have been made.
 
 
 24
 Nor should the fact that the appellant attempted to persuade the Jacobs Company to accept the transformers at the contract price after they were repaired, and in doing so took the position that the repaired transformers were functionally as good as new, prevent the appellant from recovering the depreciation in market value from the appellee in this present action. It was the appellant's duty to minimize its damage and to get the best possible price in a resale of the transformers. Its argument in doing so was in furtherance of that duty. The argument was not successful in making a favorable sale. It did not establish market value. It was not relied upon by anyone. There is no estoppel involved. Nor is the final sale to the Jacobs Company at the alleged reduced price of $6,108.50, conceding for the moment that it was a reduced price, a material factor in the case. Appellant's claim for depreciation in market value is not based on that figure. It is based on a market value after damage and repair of $7,200, which figure is supported by substantial evidence in the record. Appellant is entitled to an item of damage in addition to the cost of repair, which is the difference between the contract price of $9,810 and the reasonable market value of the tranformers after they were repaired, regardless of the price which was eventually agreed upon by it and the Jacobs Company. That market value is the decisive issue in the case. There has been no finding with respect to it and no award of damages based upon it.
 
 
 25
 If the transformers had not been damaged in transit, they would have been delivered to and accepted by the purchaser at the agreed purchase price of $9,810. The only reason this price was not received by appellant was because of their damage in transit, for which appellee, not the appellant, was entirely responsible. Yet the majority opinion places the resulting loss upon the appellant, who was in no way responsible for the damage which prevented the contract from being carried out.
 
 
 26
 I am of the opinion that the judgment should be reversed and the case remanded for further proceedings consistent with the views expressed herein.