**SOUTHWESTERN MOTOR TRANSPORT CO., Inc., Petitioner,**

v.

**VALLEY WEATHERMAKERS, INC., Respondent.**

**No. B–403.**

Supreme Court of Texas.

March 27, 1968.

Dissenting Opinion May 15, 1968.

Rehearing Denied May 15, 1968.

Hardy & Sharpe, Brownsville, Muse, Currie & Kohen, Ralph Currie, Dallas, for petitioner.

Johnson & Davis, Orrin W. Johnson, Harlingen, for respondent.

NORVELL, Justice.

Valley Weathermakers, Inc. (Parce Engineering Company), the plaintiff in the trial court and respondent here, contends that its action against Southwestern Motor Transport Co., Inc. was one based upon a special oral contract whereby Parce Engineering Company[1] performed serv-

1. Parce Engineering Company was actually a trade name of Valley Weathermakers which purchased various items of air conditioning equipment manufactured by the Carrier Corporation. Valley Weathermakers agreed with Carrier that it would not use "Weathermaker" as a trade name. Most of the documents in-

ices and furnished materials in repairing damaged air conditioning equipment for Southwestern under an implied promise that it would be paid a reasonable amount for such services and materials.

The trial court after a hearing without a jury rendered judgment against Southwestern for the principal amount of $7,955.23, plus interest, plus $1,537.10, attorney's fees for the trial court, plus $1,000.00 for the Court of Civil Appeals, plus $1,000.00 for the Supreme Court of Texas, plus $1,000.00 for the Supreme Court of the United States, payable in the event the case was appealed to such appellate courts.[2] The purported basis of the attorney's fee allowance was Article 2226, Vernon's Ann.Tex.Civ.Stats.[3] The Court of Civil Appeals affirmed. 416 S.W.2d 488.

While it appears that Southwestern is liable to Parce in some amount, it is petitioner's contention that such liability is based upon federal law, notably, the Carmack amendment to the Hepburn Act (Interstate Commerce Act), 49 U.S.C.A. § 20 (11), and not upon a special contract whereby Parce was employed to do certain repair work for Southwestern. We agree with petitioner's analysis of the case and accordingly reverse the judgments of the lower courts and remand the cause for another trial consistent with this opinion.

■ While there are a number of items which make up the amount of the judgment rendered against it which are disputed by petitioner upon one ground or another, the main controversy between the parties relates to attorney's fees. The principal difference between an action for labor and materials furnished under state law and an action for damages under the Interstate Commerce Act is that in the former, attorney's fees may be recovered, while in the latter, they may not.[4] See, Strickland Transportation Co. v. American Distributing Co., 198 F.2d 546 (5th Cir. 1952), citing with approval Thompson v. H. Rouw Co., 237 S.W.2d 662 (Tex.Civ. App.1951, writ ref'd n.r.e.).

These are the facts of the case:

On August 28, 1965, Parce Engineering Company, a manufacturer, assembler and supplier of air conditioning equipment, located in Harlingen, Texas, delivered to Southwestern Motor Transport some forty panels of air cooling equipment and allied vessels for shipment in interstate commerce to the Georgia Experiment Station of the United States Department of Agriculture. Southwestern issued its through bill of lading. The panels were unusually large and heavy and were loaded upon a special trailer owned by Strickland Transportation Company. This trailer was haul-

volved in the controversy were executed in the name of Parce Engineering Company, and we shall use that name in designating the plaintiff-respondent. Mr. C. W. Parce was president and directing head of both Valley Weathermakers and Parce Engineering Company.

2. As to awards of attorney's fees conditioned upon appeals being taken, see, Cooksey v. Jordan, 104 Tex. 618, 143 S.W. 141 (1912), Preferred Life Ins. Co. v. Dorsey, 281 S.W.2d 368 (Tex.Civ. App.1955, writ ref'd n.r.e.).

3. Article 2226 provides:
   "Any person having a valid claim against a person or corporation for personal services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

4. It appears in the record that Senator Magnuson of Washington has introduced a bill which would allow successful claimants in freight damage cases to recover attorney's fees, but such bill has not as yet been passed by the Congress.

ed by a Southwestern tractor to San Antonio where it was turned over to a connecting carrier, Strickland, which undertook to transport the panels eastward toward their Georgia destination. On September 1, 1965, while upon Strickland's lines, the trailer collided with the supports and top of a highway underpass near San Marcos, Texas. The air conditioning panels, while not destroyed, were severely damaged and were returned to Parce at Harlingen.

At this juncture, we pause to examine the legal situation of the parties. It seems to be the position of Parce that immediately after the collision and damage to the shipment, Southwestern became liable for the repair of the air conditioning panels. This is not strictly accurate. The damage occurred on Strickland's lines. At common law, Southwestern would not have been liable to Parce. Its liability as an initial carrier is affixed and controlled by the Interstate Commerce Act and the bill of lading.[5] The liability affixed by the Interstate Commerce Act and the bill of lading is for "the full actual loss, damage or injury to such property." Title to the damaged panels remained in Parce. If it wished to comply with and complete its contract with the Department of Agriculture, it would of necessity have to repair, replace or rebuild the damaged panels. It is the usual rule that "where goods are

not totally destroyed, a shipper is ordinarily bound to accept the goods in damaged condition looking to the Carrier for the difference in value * * *." Sunset Motor Lines, Inc. v. Lu-Tex Packing Company, 256 F.2d 495 (5th Cir.1958); Strickland Transportation Co. v. American Distributing Co., 198 F.2d 546 (5th Cir.1952); Gulf, Colorado & Santa Fe Ry. Co. v. Everett & Long, 37 Tex.Civ.App. 167, 83 S.W. 257 (1904, no writ). The difference in value may be measured by the reasonable cost of repair in a suitable case. In Continental Can Co. v. Eazor Express Co., 16 Federal Carriers Cases, ¶ 81,701 (S.D.N.Y.1964), aff'd 354 F.2d 222 (2nd Cir.1965), it was said:

"The reasonable cost of repair is an appropriate measure of that loss where the property is not a total loss, but can be and is repaired, and the cost of repair is not out of proportion to the value of the property."

See also, Kirkhof Electric Co. v. Wolverine Express, Inc., 269 F.2d 147 (6th Cir. 1959).

This rule is one of general application and applies to both interstate and intrastate transportation. Pasadena State Bank v. Isaac, 149 Tex. 47, 228 S.W.2d 127 (1950). See also, Restatement of Torts, Comment under clause (a) of § 928, wherein it is pointed out that if a

---

5. 49 U.S.C.A. § 20(11) reads in part as follows:

"[That] any common carrier * * * subject to the provisions of this part receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier * * * to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, * * * ; and any such common carrier * * * so receiving property

for transportation from a point in one State * * * to a point in another State * * * or any common carrier * * * delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, * * *."

chattel is not rendered entirely worthless, "The owner thereof can recover only the difference in its value before and after the harm, except that if, after the harm, it appears to be economical to repair the chattel, he can elect to recover the cost of repairs, * * *."

While the reasonable cost of repair would appear to be the appropriate measure of the "full actual loss, damage, or injury to [the] property," the selection of this measure is not automatic. Parce could have taken the position that its damages should be measured by the difference in value of its property immediately before and immediately after the injury occurred. Southwestern was not bound to repair simply because an injury to property had taken place. The reasonable cost of repair was after all a measure of damage to be applied only if insisted upon by the party who has suffered damage, or agreed to by the parties, or if found by a court to be the most appropriate and economical measure.

This then was the legal status of the parties shortly after the damage had occurred and the panels had been returned to Parce as the owner thereof. It was an appropriate situation for negotiation and settlement. The parties proceeded to negotiate and on September 13, C. W. Parce, as President of Parce Engineering Company, wrote Southwestern a letter which contained the following:

"We expect a complete and full replacement of all damaged panels, condensing or cooling units, or any other items damaged in the shipment; rental expense on a warehouse for the use in rebuilding, replacing, repainting damaged equipment, along with any other necessary services in conjunction with said equipment; the cost of transportation of personnel to the warehouse from our place of business, along with the cost involved of obtaining necessary mater-ials, parts, etc.; the cost of all labor for carpenters, mechanics and helpers to rebuild, repair and replace damaged items; the cost of supervisory personnel as required to supervise repairs or replacement; the cost of telephone calls and other communication necessary to obtain, repair or replace items; interest at 7% on the amount of contract with the Government for the delay in effecting delivery, from the date shipment was originally made on August 27, 1965, until totally repaired or replaced shipment is received at final destination, less reasonable time of delivery of shipments from Harlingen to destination, and based on the amount of contract of $19,760.00.

"We shall also expect to be reimbursed as a result of loss or damage as presently unforseen. (sic) To the above cost will be added 20% to cover the cost of taxes, insurance and overhead."

Herzing, Southwestern's terminal man at Harlingen, who described himself as being in the middle of a dispute between Strickland and Parce, attempted to work out a settlement with Strickland whereby Parce could proceed to repair the damaged panels. Parce was the original maker of the panels and the evidence indicates that there was no repair shop within 400 miles of Harlingen that was equipped to make the necessary repairs. Herzing, who according to his testimony thought he had a "go ahead" from Strickland, then told Parce to make the repairs and indicated that the loss was covered by insurance. Herzing was evidently mistaken as to insurance coverage but testified that he had talked with representatives of Strickland and believed the repair authorization was satisfactory to Strickland. Parce repaired the panels and they were then shipped by rail to Georgia and delivered to the Department of Agriculture in compliance with Parce's contract.

There was no evidence that Herzing, Southwestern or Strickland ever agreed to pay the items of damage specified in

Parce's letter of September 13. However, on November 26, Parce presented a claim to Southwestern through Herzing. The form of claim was labeled as the "Standard Form for Presentation of Loss and Damage Claim" and is that generally used in connection with losses covered by a uniform bill of lading. This claim contained an itemized list of charges as follows:

| | |
|---|---:|
| "18—4 x 10 x ⅜ Plywood | $ 95.17 |
| 1—⅝ x ⅞ Bushing | .25 |
| 62—4 x 10 x ⅜ Plywood | 385.02 |
| 40—4 x 10 x ⅜ Plywood | 246.40 |
| 2lbs nails | .45 |
| 2—7' x 1 ⅛ Full Round WPP | 1.09 |
| 1—8106–3 Paragon Clock | 19.60 |
| 1—15 x 15 x 1 Box | 7.65 |
| 1—41DB2OAG Contactor | 12.24 |
| 20—2 x 4—8 3 lb #16 Nails | 13.74 |
| Lumber, Nails, etc. | 31.95 |
| Freight on Condensing Unit | 8.97 |
| Sub-let labor | 143.14 |
| Tex-Steel-Insulation | 1,524.00 |
| Tax | 30.48 |
| Condensing Unit Cover | 19.88 |
| Long Distance Phone Calls | 23.19 |
| 1—AH20CF Condensing Unit | 297.71 |
| Light Bill—warehouse | 9.19 |
| Rent on Warehouse | 100.00 |
| Contractor | 1,933.73 |
| Labor (handling panels, refrigeration and electrical) | 580.25 |
| Supervisory | 145.00 |
| Freight | 842.62 |
| Total Cost | 6,471.72 |
| **Plus:** | |
| Overhead, Taxes, Insurance, Truck Expense 20% | 1,294.34 |
| Interest on Contract $19,760.00 for 50 day delay | 189.17 |
| TOTAL AMOUNT DUE THIS DATE | $7,955.23" |

———◆———

This claim was evidently turned over to Strickland. It obviously contained items which could not be classed as either labor or materials. Whether they were items that could be recovered under the terms of the bill of lading or the Interstate Commerce Act is another matter. At any rate, Strickland deemed the claim excessive because it contained many items of special damage of which the carriers had no notice when the panels were accepted for shipment. Hadley v. Baxendale, 9 Ex. Rep. 341, 156 Eng.Rep. 145 (1854), McCormick on Damages, § 138 (1935). By letter of January 10, 1956, Strickland requested that Parce amend the claim. A portion of this letter was as follows:

"After handling this file with our attorney, we have been advised that the

claim should be amended to delete the special damages from this claim.

| | |
|---|---|
| Long Distance Phone Calls | 23.19 |
| Light bill—Warehouse | 9.19 |
| Rent on Warehouse | 100.00 |
| Freight | 842.62 |
| Interest on Contract $19,760.00 for 50 day delay | 189.17 |
| Overhead, Taxes, Insurance, Truck Expense 20% | 1294.34 |

"The above listed items for a total of $2,456.51 are considered as special damages and cannot be considered as part of a loss and damage claim. We as a common carrier are prohibited from paying these charges, therefore, we ask that you amend your claim accordingly."

Parce refused to amend the claim. It was not paid and this suit was instituted.

While the plaintiff-respondent's petition may have asserted an independent agreement made by Herzing on behalf of Southwestern to employ Parce to repair the damaged panels owned by Parce, the evidence does not support that theory. What the evidence does show is that Herzing was negotiating a settlement of a freight damage dispute between Parce on one hand, and Southwestern and Strickland on the other hand. Repair by Parce was an obvious course of action and it seems fairly certain that the "full actual loss, damage or injury" contemplated by the bill of lading should be measured by the reasonable cost of repair. There is no evidence that Southwestern had authorized Herzing to enter into independent contracts of this nature and it is difficult to raise an estoppel to support a claim of apparent authority upon the distinction between a promise to pay the reasonable cost of repair and a situation in which one's damages are to be measured by the reasonable cost of repair. In fact, it seems entirely reasonable to regard the agreement to repair as being a selection of the reasonable cost of repair as the measure of the loss. The legal right then vested

in Parce was one to enforce this measure and establish the reasonable cost of repair.

▇▇▇ There is a sound public policy established at the time the Constitution of the United States replaced the Articles of Confederation calling for a centralized control over interstate commerce. That policy dictates that claims for freight damage should be negotiated and settled without fear or danger of incurring additional penalties or burdens imposed by local laws. If attorney's fees are to be imposed, the Congress should be the authority to act. It has been held and we think it is well established by decisions of the Fifth Circuit that attorney's fees may be a burden upon interstate commerce. In Thompson v. H. Rouw Co., 237 S.W.2d 662 (Tex. Civ.App.1951, writ ref'd, n.r.e.), a claim for attorney's fees under Article 2226 was asserted upon the theory that Rouw's action was based upon a claim for "damaged freight." The court pointed out that the federal authority had occupied the field and that, "There can be little doubt that Congress had undertaken to legislate concerning the measure of damages to freight in an interstate shipment. This matter has long since been decided." The case of Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1912), was cited for the proposition that local regulation may neither diminish nor increase the carrier's liability. Cf. Missouri Pacific Ry. Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). As to the matter of attorney's fees, the court pointed out that at common law attorney's fees were not recoverable in an action by a shipper against a carrier and that as Congress had taken the subject of interstate freight damages in hand, "Texas can not (by the allowance of attorney's fees) extend the interstate carrier's liability for losses, and certainly not to losses on other roads in other states. Congress has nationally undertaken the regulation of commerce between the states, and shippers will not be accorded the privilege of

shopping among the states for forums which allow additional recoveries." [6]

In Strickland Transportation Co. v. American Distributing Co., 198 F.2d 546 (5th Cir.1952), the question was whether attorney's fees provided for by Article 2226 could be considered in determining the jurisdiction of a federal district court. The Court of Appeals said:

"The attorneys' fees sought to be recovered were provided, if at all, by Article 2226 of the Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. art. 2226, * * *. The Texas Court of Civil Appeals has properly noted, in connection with this statute, that the Carmack Amendment, 49 U.S.C.A. § 20 (11) precribes the damages as the 'full actual loss, damage, or injury to such property, etc.', and that Texas cannot extend the carrier's liability for losses beyond the limit allowed by Congress. Thompson v. H. Rouw Co., 237 S.W.2d 662, 666. 'Claimed attorneys' fees cannot be considered for jurisdictional purposes where there is no legal basis for the recovery of such fees.' Annotation 167 A.L.R. 1249, 1250 and cases cited, including Colorado Life Co. v. Steele [8 Cir.], 95 F.2d 535."

In legal contemplation, the present claim by Parce must also be considered as involving a claim for damages to freight arising under federal law, namely, the Interstate Commerce Act. The evidence is not legally sufficient to support an independent contract for labor and materials under Article 2226. In fact, the communications between Herzing (acting on behalf of either Southwestern or Strickland) and Parce are so intimately connected with the interstate transaction as to be a part thereof in that they were attempts to negotiate a settlement of a federally imposed liability.

In the recent case of Sylgab Steel & Wire Corp. v. Strickland Transportation Co., 270 F.Supp. 264 (1967), the United States District Court for the Eastern District of New York was called upon to determine whether the claim of the steel and wire company against the carrier was one "arising under" federal law. The claim involved charges for repairs and was summarized in the opinion as follows:

"The complaint alleges that the plaintiff delivered in New York a number of machines in good condition to the defendant, 'a common carrier of goods for hire,' and paid 'its full charges' for transportation to New Orleans. A 'uniform straight bill of lading' was issued. Damaged machinery was delivered. Defendant, after inspection, 'specifically authorized and directed the plaintiff to repair' the machinery and 'bill the defendant for its expenses.' Although some $1,900.00 was spent on repairs, one of the machines 'cannot be restored.' In view of the 'negligence, carelessness and improper conduct of defendant,' plaintiff claims damages in the total sum of $7,290.94 together with costs and disbursements."

As to the question of whether liability was grounded upon the federal law or upon a special contract for repair, the court said:

"State and federal courts have properly been reluctant to divide the relationship between interstate shippers and car-

6. The Court of Civil Appeals also discussed Missouri, Kansas & Texas Ry. Co. v. Harris, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377 (1913), cited by respondent, which dealt with Articles 2178 and 2179 of the 1911 Revised Civil Statutes. These were predecessor statutory provisions to Article 2226 of the 1925 revision and permitted a nominal or limited attorney's fee on small claims. A 1949 amendment allowed the recovery of a reasonable fee with no specific limitation of amount. We need not repeat what was said by the Court of Civil Appeals in Thompson-Rouw other than to say that we approve of that court's discussion of Missouri, Kansas & Texas Ry. Co. v. Harris.

riers into discrete parts, some governed by federal and some by state law. * *

"Where the contract between carrier and shipper or receiver to provide compensation for damaged goods is so closely connected to the agreement embodied in the bill of lading as to constitute at most a clarification or modification of that agreement it is governed by federal law. The federal pre-emptive tent over the main attraction, the bill of lading, covers what is essentially a side-show, the agreement by the carrier to repair.

* * *

"If the federal policy in favor of unhindered commerce is strong enough to cover the damage claims based upon the bill of lading, it is powerful enough to cover collateral agreements on compensation for damaged goods such as the one in this case. * * *"

We think this case correctly states the federal law. It was pointed out in Thompson-Rouw and the other cases here cited that interstate commerce is controlled upon a national level and from a national viewpoint. The controlling circumstance in this case is that we are concerned with an interstate shipment, and uniformity in the treatment of freight damage claims is essential and hence must be controlled by the Congressional regulations.

■ While respondent's petition does not present a theory of recovery based upon the Interstate Commerce Act, the *facts* pleaded do show a probable liability under such enactment. For that reason, we have concluded that the cause should be remanded rather than rendered. There are also certain items contained in respondent's claim which are seemingly special damages which may not be recoverable under the federal law. In view of these circumstances, we are of the opinion that the cause should be remanded in the interests of justice so that respondent's claim may be adjudicated in accordance with the applicable principles of federal law and

the defenses permitted in answer to a claim asserted under the Carmack amendment.

Reversed and remanded.

## DISSENTING OPINION

GREENHILL, Justice.

I agree with the reasoning and conclusion of the Court of Civil Appeals on the main question, the liability of Petitioner for services rendered and material furnished. 416 S.W.2d 488. Since the holding of this Court is that there is no liability on the part of Petitioner, no useful purpose would be served by writing upon the question of the amount of attorney's fees which should be recovered.