**YELLOW FREIGHT SYSTEM, INC.,**
**Appellant,**

v.

**HYDRAULIC PRODUCTS CO., Inc.,**
**Appellee.**

**No. 8279.**

Court of Civil Appeals of Texas, Amarillo.

May 30, 1972.

Rehearing Denied June 19, 1972.

Griffith, Brister & Benson, Daniel H. Benson, Lubbock, for appellant.

W. Hugh Harrell, Lubbock, for appellee.

REYNOLDS, Justice.

Appellant Yellow Freight System, Inc., has contested the allowance of attorney's fees in connection with a judgment rendered for appellee Hydraulic Products Co., Inc., for repair of freight damaged in interstate commerce. Affirmed.

Appellee is a Texas corporation based in Lubbock and engaged in the manufacture of hydraulic pumps and related products. Previous to the transaction resulting in this litigation, appellee had sold and shipped merchandise to one Jimmy Rowan in Clovis, New Mexico. Rowan paid the freight charge upon delivery. Each shipment was billed to Rowan by an invoice providing, inter alia:

> "Hydraulic Products Co., Inc., assumes no responsibility for loss or damage in transit. When merchandise is receipted for by transportation company it automatically becomes property of purchaser. Inspect this shipment on arrival against possibility of loss or damage. If loss or damage exists, file claim with delivering carrier."

In September, 1970, appellee sold three hydraulic pumps to Rowan, issued its invoice containing the above quoted printed language, and consigned the shipment to appellant, a common carrier, for delivery, receiving appellant's bill of lading. The

bill of lading was not introduced in evidence. The record is silent as to the disposition of the bill of lading; i. e., whether it was retained by appellee or transferred to Rowan. During shipment, one of the pumps was damaged and Rowan refused to accept delivery of that pump. Appellant requested Rowan, the consignee, to file a claim for damages, but Rowan did not do so. Appellant returned the pump to its Lubbock terminal, and the terminal manager contacted appellee's office about repairing the pump. There were several other places of business in Lubbock that repaired pumps. Upon being advised the pump would have to be inspected for a repair estimate, the terminal manager caused the pump to be delivered to appellee's place of business. The pump was inspected and appellee's plant manager informed appellant's terminal manager that the cost of repairs would be $308.73, and perhaps quoted the price for a new pump. After consideration by appellant's officers, its terminal manager requested appellee to repair the pump at the price stated. When appellee repaired the pump, it was delivered to appellant and transported to Clovis where Rowan accepted delivery.

Appellee's statement in the sum of $308.-73 for the repairs was submitted to appellant's terminal manager on the 19th or 20th day of October, 1970. Appellant sent the repair invoice to its Clovis office with the request that it be presented to Rowan and that he file a claim for the damaged merchandise since, as appellant's terminal manager testified, "it's always customary for the consignee to file the claim." Approximately a month later, the repair invoice was returned to the Lubbock terminal manager for payment. He telephoned the Clovis office and was told that it "was supposed" that Rowan had filed a claim. Another month passed without the payment having been made and appellee's plant manager contacted appellant's terminal manager about the unpaid account. Appellant took the position that the invoice could not be paid in the absence of a claim for the damaged shipment, contacted Rowan by telephone in an unsuccessful attempt to induce him to file a claim, and then requested appellee to file the claim, sending one of appellant's employees to appellee's office to assist in preparing the claim. The claim was filed on or about January 29, 1971. This claim was not introduced in evidence and the form of it was not described. In the interim, appellant had requested appellee to deliver the damaged pump motor to it for salvage, but it developed that the damaged motor had been repaired and there was no salvage available to appellant.

The account had not been paid on March 6, 1971, when appellee's attorney made a written demand for payment to be made no later than March 12, 1971. No payment was made and appellant filed this suit on March 15, 1971, in the form of an open account for the labor done and materials furnished in making the repairs, and alleged entitlement to and prayed for reasonable attorney's fees by authority of Vernon's Ann.Civ.St. art. 2226.[1] Appellant answered, admitted liability to the extent of $308.73 only under the Interstate Commerce Act,[2] and tendered that sum into the

---

1. "Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, over charges on freight or express, lost or damaged freight or express, or stock killed or injured or suits founded upon a sworn account or accounts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such persons or corporation, he may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. * * *." As amended, eff. May 17, 1971.

2. 49 U.S.C.A. 20(11), which provides, in part, that: "Any common carrier * * * receiving property for transportation from

registry of the court. Subsequent pleadings solidified appellee's contention that the controversy arose over and was based on an open account for labor done and materials furnished for which reasonable attorney's fees were recoverable, and appellant's position that the controversy arose over merchandise damaged in interstate commerce for which appellant's liability was limited to the cost of repairs.

Stipulations were filed, including the amounts for reasonable attorney's fees at various levels of the proceedings, and evidence was heard by the court sitting without a jury. At the conclusion of the hearing, the trial court entered judgment on December 29, 1971, in favor of appellee for the sum of $779.40—presumably including the $308.73, interest thereon to date of judgment and the stipulated reasonable sum of $450.00 as attorney's fees in the trial court—bearing interest at the rate of 6% per annum from date of the judgment until paid, and providing for additional stipulated amounts for attorney's fees through the various stages of appeal that may be taken, up to and including the United States Supreme Court.[3] The trial court made and filed findings of fact and conclusions of law in support of its judgment.

The sole issue presented and to be determined on this appeal is whether, under the facts, appellee is entitled to attorney's fees. Appellant has presented five points of error contending that the award of attorney's fees was erroneous, and appellee has answered with two counterpoints asserting that the award was correct.

In its points of error numbered three and four, appellant submits that there was no evidence and factually insufficient evidence, respectively, to support the trial court's finding of fact no. 2 that "the agreement to repair was made and the repairs completed at a time when (appellee) had not and was not asserting any claim against (appellant) for damages to freight." This finding is supported by the undisputed evidence which, as set forth above, reveals that, pursuant to the agreement to repair, the repairs were completed on October 19, 1970, and no claim for freight damage was made until January 29, 1971, when, at appellant's insistence and on the representation that a claim was a prerequisite to payment of the repair invoice, a claim was filed. This record does not contain even a suggestion that appellee had made or intended to present a claim for damage caused to the pump by appellant until appellant insisted that such a claim was necessary before the cost of repairs could be paid. Points numbered three and four are overruled.

The most equivocal question is presented by appellant's points of error numbered one and two. They advance the proposition that the agreement to repair was only collateral to and so intimately connected with the damage incurred in the interstate shipment that the Interstate Commerce Act precludes the recovery of attorney's fees. Both parties are agreed that if this controversy in fact is an action for damages for injury to freight in interstate commerce, the Interstate Commerce Act's measure of damages as being "the full actual loss, damage, or injury to such property" does not include the allowance for attorney's fees, 13 C.J.S. Carriers § 265b, and since Congress has legislated that measure of damages, Texas cannot extend the carrier's liability for losses to include attorney's fees other-

---

a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, * * * for the full actual loss, damage, or injury to such property caused by it * * *."

3. No complaint is made to the method of allowing attorney's fees; however, as to the proper assessment of attorney's fees conditioned upon appeal, attention is directed to International Security Life Insurance Company v. Spray, 468 S.W.2d 347 (Tex.Sup.1971).

wise authorized by V.A.C.S. art. 2226. Thompson v. H. Rouw Co., 237 S.W.2d 662 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.). However, appellee insists its action is not one for damage to interstate commerce freight, but rather that it is one for labor done and materials furnished under an independent contract giving rise to liability for reasonable attorney's fees under the circumstances contemplated by V.A.C.S. art. 2226. We agree with appellee's contention that the facts of this case do not bring it within the federal statute. In legal contemplation this is an independent contract to recover the agreed reasonable value of labor done and materials furnished.

■■ By the terms of the sale between appellee and Rowan, title to the pump in question passed to Rowan when appellee received appellant's bill of lading upon consignment, and Rowan was to look to appellant for any loss due to shipment damage. Appellant now claims that it was liable only to appellee, the lawful holder of its bill of lading; however, not only does the record fail to disclose who the lawful holder thereof was at the material time, but appellant's testimony was that at the time Rowan was the proper party to file the claim for the damaged pump. Generally, the owner of the merchandise—in this instance, Rowan—is the one entitled to maintain an action against the common carrier for loss of, or injury to, the property, 13 C.J.S. Carriers § 249a, and even if the form of the bill of lading were otherwise, the seller's—in this instance, appellee's—property in the goods shall be deemed only for the purpose of securing performance by the buyer-consignee under the contract. 46 Am.Jur., Sales, § 455.

■ The "full actual loss, damage, or injury to property" measure of damage provided by the federal statute may be determined by the reasonable cost of repair to the pump or the difference in its value immediately before and immediately after the damage occurred. Southwestern Motor Transport Co., Inc. v. Valley Weathermakers, Inc., 427 S.W.2d 597, 37 A.L.R.2d 1114 (Tex.Sup.1968). Appellant, therefore, was not bound to repair the pump, but could have discharged its liability to Rowan—and its only liability—by paying him whichever measure of damage that was the most economical. Having elected to have the pump repaired, appellant could have had the work done at any number of places, but chose instead to have appellee make the repairs at the agreed price of $308.73. It was stipulated that appellant's terminal manager had the authority to bind appellant to the contract made with appellee for the repair of the pump at the agreed cost of $308.73. It cannot be doubted that had appellant elected to have some other shop make the repairs, that third party would have been entitled, under these facts, to the recovery allowed appellee by the trial court.

■ Appellant relies primarily on Southwestern Motor Transport Co., Inc. v. Valley Weathermakers, Inc., supra, to sustain its contention that attorney's fees are not recoverable by appellee. In that case, although the plaintiff asserted a special oral contract for repair, the Supreme Court denominated the action to be one of recovery for damages to merchandise in interstate commerce based upon the Interstate Commerce Act, under which attorney's fees could not be recovered. Analytically, that case is distinguishable and not determinative of the issue presented by the facts in the case at bar. There, legal title remained in the shipper; here, title passed to the consignee when appellant receipted for the pump. There, to comply with its contract with the consignee, the shipper was required to repair or replace the damaged merchandise; here, the contract was complied with when the pump was entrusted to appellant for delivery. There, the damaged property was returned to the shipper as the owner; here, the damaged property was owned by Rowan and was returned to appellee for repair under the agreement made. In *Southwestern*, the shipper and

carrier proceeded to negotiate a settlement of the amount of damages; in this case, there was only an agreement to repair at an agreed price. There, no other repair shop capable of making the necessary repairs was located within 400 miles of the shipper's location; here, several repair shops equipped to make the required repairs were located in the same city. There, no agreement was reached in the negotiations on the specific items of damage; here, a definite agreement to repair at a cost of $308.73 was concluded. There, in assessing the charges made, the shipper completed a claim in the form generally used in connection with losses covered by a uniform bill of lading; here, the charge was shown on a repair invoice, and the form of the claim required by appellant is not shown. In *Southwestern*, the claim included charges for items disputed as proper in a loss and damage claim and found by the Supreme Court not to be items covered by the federal law; in the case here, no dispute existed as to the agreed cost of repairs. There, no evidence of the authority of the carrier's agent to enter into an independent contract for repairs was produced; here, the authority of the carrier's terminal manager to conclude the contract was stipulated. There, the negotiations were so intimately connected with the interstate transaction as to be a part thereof in attempting to settle a federally imposed liability; here, since appellee was not the owner of the damaged pump so as to be entitled to claim damages for the injury thereto, the transaction was not so intimately connected with the interstate transaction as to be a part thereof, but was in the nature of the appellant dealing with a stranger to the shipment. Appellant's points of error numbered one and two are overruled.

■ Thus, this being an independent contract for the agreed reasonable value of labor done and materials furnished, and there being no issue as to the procedural steps taken, appellee is entitled to recover attorney's fees under V.A.C.S. art. 2226,

unless it can be said, as appellant does in its point of error number five, that appellee's cause of action is upon a special contract not within the provisions of V.A.C.S. art. 2226. We have carefully considered the special contract authorities cited by appellant, but it is sufficient to state, without extending this opinion by distinguishing comments, that those authorities concerned contracts to furnish a product or a general service and are not dispositive of the issue presented here. In this case, the contract was not for a product or a general service, but was one for labor done and materials furnished. In this situation, it is established that attorney's fees are recoverable. V.A.C.S. art. 2226; Tacker v. Phillips, 473 S.W.2d 1 (Tex.Sup.1971); George Linskie Company, Inc. v. Miller-Picking Corporation, 463 S.W.2d 170 (Tex.Sup. 1971). Appellant's point of error number five is overruled.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

Appellant asserts, in its motion for rehearing, that the statements in the opinion that the bill of lading was not introduced in evidence, and that the record fails to disclose who the lawful holder of the bill of lading was at the material times, are contrary to the record which shows both the initial and subsequent bills of lading were introduced in evidence as appellant's exhibits, and reflected appellee to be the lawful holder thereof. The opinion statements were drafted in the context of recitals about, and perhaps should have included specific denomination of, the shipper's copy of the initial bill of lading held by appellee when the merchandise was first delivered to appellant for shipment. This bill of lading was not introduced in evidence. The bills of lading submitted by appellant were its carbon copies and revealed appellee to be the shipper but these bills, of course, would not and could not reveal whether appellee retained, or endorsed to Rowan, its shipper's copy of the bill of lad-

ing so as to establish the lawful holder at the times relevant.

The motion for rehearing has been considered with care, but it does not actuate us to change our original holding that the cause of action is one for recovery on a contract for repairs independent of and not controlled by the preemptive provisions of the Interstate Commerce Act applied to a claim for damage to interstate commerce freight. Appellant's motion for rehearing is overruled.